JOHN HURLEY AND TIMOTHY HURLEY v. SAMUEL C. WATSON.

*Principal and agent—Extent of authority—Duty of party dealing with agent—Application of agent's private debt upon account of principal—Ratification—Knowledge of owner of books of account as to their contents.*

1. A person who deals with an agent is bound to inquire into the *extent* of his authority, ignorance of *which* is no excuse.

2. The authority of an agent to collect money for his principal does not authorize him to receive anything but money in payment from the debtor.

3. The carelessness of the principal in reposing confidence in his agent does not make him liable to a third party who, in dealing with such agent, fails to exercise the diligence usual with good business men under the circumstances.

4. A party dealing with an agent who has *general* authority to sell goods or collect debts is bound to know that he has no authority by virtue of his agency to apply or offset his *private* debt to such *third* party in payment of the debt of the third party to the principal; and, if this is done, *he* takes upon himself the burden of showing an *express* authority in the agent, or ratification by the principal.

5. There can be no ratification of the act of an agent without full knowledge of the *facts* which it is claimed are ratified.

6. *Knowledge* on the part of a firm of coal dealers that a clerk had for more than seven years been in the habit of applying his rent

and other claims due from him to his landlord on account of coal purchased of said firm by the landlord, during which time no objection was made by said firm, amounts to a ratification of . such unauthorized course of dealing.

7. A person is presumed to be cognizant of the contents of his books of account, but the probative force of such presumption may be strong or weak, as the circumstances may show that the party made the original entries, or that they were made by a clerk or book-keeper, and may be entirely overcome and disproved by the positive uncontradicted testimony of the party that the accounts were kept and entries made by such agents, and had never been examined by him, and that he had no knowledge thereof.

8. It is generally a question for the jury whether silence affords a reasonable presumption of ratification under the circumstances of the particular case, and it will depend very much upon the question whether the party dealing with the agent had reason, from the course of previous dealings, or from the circumstances of the case, including the fact that the principal had notice or knowledge of the assumed authority of the agent in the dealings, to suppose that the principal would inform the party if he intended not to ratify the act, and whether his delay and silence, after such notice or knowledge, are or are not a fraud upon the other party.

Error to Wayne. (Chambers, J.) Argued January 4, 1888. Decided March 2, 1888.

Assumpsit. Plaintiffs bring error. Reversed. The facts are stated in the opinion.

*William F. Atkinson,* for appellants.

*Edwin F. Conely,* for defendant.

CHAMPLIN, J. Plaintiffs were copartners, doing business as coal dealers under the firm name of J. & T. Hurley, in the city of Detroit.

They had in their employ for several years one P. J. Clark. The defendant is a druggist, and had rented a house to Clark. In the summer of 1879 Clark requested defendant to purchase coal from him. He consented to do so, and from that

time dealt with Clark. The coal was delivered by plaintiffs' teams, and the firm name was painted upon the boxes of the coal wagons. Defendant also gave receipts to those delivering the coal, which acknowledged the receipt of the coal from J. & T. Hurley. Clark's name nowhere appeared upon the receipts or bill-heads of the firm. Clark also traded with defendant at his drug-store upon credit, and at Clark's request the rent and account due to defendant were credited upon the account due from defendant for coal, so far as such credit went, and the balance he paid to Clark in cash. These dealings ran through a course of more than seven years, during which time several settlements were had and balances adjusted. Defendant knew the business in which plaintiffs were engaged, and knew that Clark was employed in their office, but did not know exactly in what capacity, or the nature or extent of his authority. He supposed him to be a general manager, from what he had observed of his transacting business.

One day Clark left the office of his employers and never returned. On looking over the books of the firm they found what appeared to be a balance due from defendant for coal, amounting to $110. Mr. John Hurley presented this bill to defendant for payment. Defendant denied owing that amount, and claimed he only owed for two tons of coal then recently purchased. In the course of the conversation between Mr. Hurley and defendant, Hurley was informed that the indebtedness of Clark to defendant for rent and drugs had for more than six years been applied as payment on the coal he had purchased through Clark. This was the first intimation or information the members of the firm had received of such fact. They thereupon commenced this suit to recover over $500 for coal delivered to defendant by Clark, from their coal-yards.

The extent of Clark's authority is not definitely settled by the testimony. It appears that he was for many years chief

clerk in the office of the firm, and had general control of the books; made most of the original entries in the day-books; assisted sometimes in posting accounts into the ledger; received money in payment of bills at the office; made out bills; collected bills at the office; took orders for coal, and settled with customers.' He had no express authority to turn. or apply his individual debts upon debts due the firm. And defendant, from first to last, never made any inquiry of Clark or of any member of the firm, although he met them frequently, as to the nature or extent of Clark's authority, or as to whether he was authorized to apply the rent and account due from him to defendant upon the indebtedness. of the defendant to the plaintiffs for coal.

It also appears that the men in the employ of the firm were paid as often as once each month in full for wages, including Mr. Clark; and these payments were kept upon the time-books, and were not posted into the ledger.

It also appears that Clark kept an individual account upon the firm ledger, in which the items credited to defendant on account of rent and drugs were charged to him. In this account there is one item of $100 posted to his credit for wages.

The plaintiffs claim that they never discovered this account upon their books; that they had entire confidence in Clark's honesty and integrity, and never had examined their books, and did not know what they contained; that their time and attention were required and given to the handling of the coal at the docks and yards, and overseeing the laborers employed, and in looking after their teams; that they had from 75 to 80 men in their employ, and were doing over a quarter of a million business a year, and had no time to examine the books, and no inclination to, as they supposed their book-keepers were honest.

These are the main facts in the case, which were submitted

to the jury under the charge of the court, and they returned a verdict upon the disputed items for defendant.

The errors assigned are upon the refusals of the court to charge as requested, and upon the charge as given, and are as follows:

"1. The court erred in refusing to direct a verdict for the plaintiffs, as requested by plaintiffs' attorney at the close of the testimony.

"2. The court erred in refusing to charge the jury, as requested by plaintiffs' attorney, 'that it was the duty of Mr. Watson, when Mr. Clark offered to turn the account of Hurley Brothers on Clark's private account, to inquire of Hurleys whether Clark had authority to do so, and that he had no right to assume that the Hurleys knew or approved of Clark's paying his private debts with their bill; and that it was the business of Mr. Watson to inquire into his agency; and that the act of his in not doing so does not form any justification in the matter.'

"3. The court erred in refusing to charge the jury as requested by plaintiffs' attorney, 'that any person dealing with a clerk, and paying a bill to a clerk, from any store (even though the bill be made upon the letter-head of the firm, and the party paying it knows that the clerk is employed by the firm), is not authorized to pay that clerk unless the clerk has been authorized to collect it, and he is only authorized to pay it in the manner in which the clerk is authorized to collect it.'

"4. The court erred in charging the jury: 'It is for you to say, from the evidence, whether the Hurleys caused Watson to believe that Clark's dealings with Watson were sanctioned by them. If you should find that Watson did so believe, and in good faith dealt with Clark, then the Hurleys are estopped from denying the validity of Clark's action in the matter, if you believe they knew of it.'

"5. The court erred in charging the jury: 'It is for the jury to consider in this case whether the conduct of the Hurleys themselves did not cause Watson to be placed in the position in which they find him, when they asserted their claim against him; and if you believe that the Hurleys, by exercise of reasonably prudent supervision or oversight over their business and their subordinates, would have seasonably known or discovered Clark's dealings with Watson, as they appear to have been transacted, and that through their lack

of such supervision or oversight they failed to know or discover the same, the Hurleys should be treated as having known and approved of Clark's dealings with Watson from the time when, by the exercise of such supervision, they would have known or discovered it.'

" 6. The court erred in charging the jury: ' Clark's position with the Hurleys, and dealings and settlements between Clark and Watson, occurring as they did, the lapse of time ensuing without complaint or objection by the Hurleys, and the settlements between Clark and Watson having been recorded, if you find they were recorded, as they appeared from time to time, according to the books of the Hurleys, to which they could have full and complete access, and which were in ordinary use in their business, raise the presumption that the Hurleys knew and sanctioned such dealings and settlements. It is not conclusive, but it raises the presumption.'

" 7. The court erred in charging the jury:  ' The burden is upon the Hurleys to establish the invalidity of the dealing. The presumption that the Hurleys knew of and approved of the transactions between Clark and Watson is not rebutted by the assertion of the Hurleys that they knew nothing of them, if the jury are satisfied from the evidence that the Hurleys did not exercise reasonably prudent supervision or oversight over their business, and thereby failed to know or discover the course their own affairs were taking.' "

The law is well settled that a person who deals with an agent is bound to inquire into his authority, and ignorance of the agent's authority is no. excuse.   The authority of an agent to collect money for his principal does not authorize him to receive anything but money in payment from the debtor.   The principal may be careless in reposing confidence in his agent, yet this does not make him liable to a third party who, in dealing with such agent, fails to exercise the diligence usual with good business men under the circumstances.   If there is anything likely to put a reasonable business man upon his guard as to the authority of the agent, it is the duty of the third party to inquire how far the agent's acts are in pursuance of the principal's limitation. As illustrated by Mr. Wharton, in his work on Agency, § 137, wherein he says:

"I may be careless in exhibiting confidence in an agent, yet this does not make me liable to a third party who, in dealing with such agent, fails to apply the diligence usual with good business men under the circumstances. The case becomes, in such a view, one of what is called 'contributory negligence;' in other words, the casual connection between my negligence in giving color to the employment of A., and B.'s loss by dealing with A., is broken by B.'s own negligence in trusting A. without due inquiry."

The duty of the defendant to make inquiry in this case, notwithstanding the apparent general management of plaintiff's business by Clark, is conclusively established by another well-recognized principle of law, and that is, that a party dealing with an agent who has general authority to sell goods or collect debts is bound to know that the agent has no authority by virtue of his agency to apply or offset his own private debt to such third party in payment of the debt to the principal. *Whitney v. Bank,* 7 Wis. 620; *Butts v. Newton,* 29 Id. 632; *Rodick v. Coburn,* 68 Me. 170; *McCormick v. Keith,* 8 Neb. 143; *Sykes v. Giles,* 5 Mees. & W. 645; *Hart v. Hudson,* 6 Duer, 294; *Scott v. Irving,* 1 Barn. & Adol. 605; *Catterall v. Hindle,* L. R. 1 C. P. 187; *Greenwood v. Burns,* 50 Mo. 52.

No overweening confidence of the principal in the agent can excuse the duty of the third party to ascertain whether the agent has authority from his principal to pay the agent's debts in that way. It is presumptively a violation of the agent's authority, and a fraud upon his principal, and the party collecting his debt from the agent in that way participates in the fraud, and cannot shield himself behind any presumed or implied authority of the agent, because none exists in such case. The party so dealing takes upon himself the burthen of showing an express authority in the agent, or ratification of the transaction by the principal.

It is not pretended that there was any express authority given by plaintiffs to Clark to apply the rent and account

due from him to defendant in payment for coal due from defendant to plaintiffs. There can be no ratification of an act of an agent without full knowledge of the facts which it is claimed are ratified. There was no evidence that plaintiffs ever had any knowledge of the dealings between defendant and Clark until after Clark left their employment. The first information the plaintiffs claim to have received was from defendant after the dealings in controversy had ceased.

But it is claimed on behalf of defendant that plaintiffs . must be held to have had knowledge of the contents of their books of account, and that the fact that those books contain an account with defendant for coal purchased from time to time from 1880, and credits therefor, so that a small balance only remains due to plaintiffs by said account, and the further fact that those books contain an account wherein Clark is charged with the amount collected of defendant, are evidence from which the jury may infer that the plaintiffs knew of the manner of dealing between Clark and defendant, and, not objecting to such dealing, it may be further inferred that they intended to and did ratify the same. Both of the plaintiffs testified positively that they never knew that such accounts stood upon their books before Clark left, and that they had never examined their books of account. The circuit judge instructed the jury that—

"Clark's position with the Hurleys, the dealings and settlements between Clark and Watson occurring as they did, the lapse of time ensuing without complaint or objection by the Hurleys, the dealings and settlements between Clark and Watson having been recorded, if you find that they were recorded, as they from time to time occurred, in the regular book of the Hurleys, to which they could have full and daily access, and which were in ordinary use in their business, raise the presumption that the Hurleys knew and approved of said settlements. It is not conclusive, but it raises the presumption. You should take into account all the other testimony, and arrive at your own conclusion from the whole.

"The burden is upon the Hurleys to establish the invalidity of the dealing. The presumption that the Hurleys knew

of and approved of the transactions between Clark and Watson is not rebutted by the assertion of the Hurleys that they knew nothing of them, if the jury are satisfied from the evidence that the Hurleys did not exercise reasonably prudent supervision or oversight over their business, and thereby failed to know or discover the course their own affairs were taking. You have heard all the facts, gentlemen.

"Counsel have embodied requests in writing, and I do not desire to comment upon the testimony. Take all the testimony in the case into consideration, Mr. Hurley's testimony regarding his knowledge of what was going on, and all the transactions and presumptions that he should have known, and in the ordinary course of dealings, if you believe his books contained the record of them, all the facts and circumstances together, as I have expressed it, and give it that careful consideration which it deserves, and your verdict will no doubt be satisfactory."

If the plaintiffs knew of the manner of dealing between Clark and Watson, and kept silent and suffered it to go on without objection for the length of time shown in the testimony, the jury would have been warranted in finding that they had ratified that course of dealing. But there must be evidence tending to prove such knowledge. There is a presumption that a person is cognizant of the contents of his own books of account. The probative force, however, of this presumption, may be strong or weak, as the circumstances may show that the party made the original entries, or that they were made by a clerk or book-keeper, and may be entirely overcome and disproved by the positive testimony of the party, uncontradicted, that the accounts were kept and entries made by a book-keeper or clerk, and had never been examined by him, and that he had no knowledge thereof. As was said by Mr. Justice Daniel, in *Fresh v. Gilson*, 16 Pet. 330:

"Liability for the acts of others may be created either by a direct authority given for their performance, or it may flow from their adoption, or, in some instances, from acquiescence in those acts. But presumptions can stand only whilst they are compatible with the conduct of those to

whom it may be sought to apply them, and, still more, must
give place when in conflict with clear, distinct, and convinc-
ing proof."

The circuit judge erred when he instructed the jury that—

" The burden is on the Hurleys to establish the invalidity
of the dealing."

This is apparent from the principles above laid down rela-
tive to the duty of one dealing with an agent.   He also erred
in charging the jury that—

"The presumption that the Hurleys knew of and approved
the transaction between Clark and Watson is not rebutted
by the assertion of the Hurleys that they knew nothing of
them."

Under the circumstances of this case, there is no ground
for saying that plaintiffs are estopped by their negligence in
not exercising a more vigilant supervision and oversight over
their business, and thereby failing to discover the course their
own affairs were taking.   Their negligence did not excuse
defendant from ascertaining whether Clark was authorized to
pay his own debts in the coal of plaintiffs, or justify the
defendant in participating in so palpable a breach of duty on
the part of the agent.   The proofs show that plaintiffs knew
that the defendant was dealing with them, but there is
nothing to show that they had any notice that such dealing
was other than in the ordinary way.   The proofs also estab-
lished the fact that the plaintiffs paid their men regularly twice
a month, including Clark.   What, then, was there to raise a
suspicion in their minds that Clark was charging coal sold to
defendant to his own account upon the books of the
plaintiffs?

The burthen of proof was upon the defendant to show rat-
ification; and generally it is a question for the jury whether
silence affords a reasonable presumption of ratification
under the circumstances of the particular case, and will
depend very much upon the question whether the party deal-

ing with the agent had reason, from the course of previous dealing, or from the circumstances of the case, including the fact that the principal had notice or knowledge of the assumed authority of the agent in the dealing, to suppose that the principal would inform the party if he intended not to ratify the act, and whether his delay and silence, after such notice or knowledge, are or are not a fraud upon the other party.

In this case the record does not disclose in what manner defendant was defrauded by the silence of the plaintiffs, even if it should be conceded that they had notice and said nothing. It is to be presumed that defendant bought no more coal than he needed for use. It is not shown that he paid a larger price for it because he could turn it upon account against Clark in the way he did. It does not appear that Clark has absconded, or that he was or is insolvent. Defendant testifies that he would as soon have paid the money for the coal, and offered to do so, but that Clark suggested to apply it upon rent due from him to defendant. If Clark had no authority to receive anything but cash in payment for coal sold to defendant, and defendant is now obliged to pay plaintiffs for such coal, Clark's debt to defendant is not discharged. He is still liable, and the defendant, so far as this record discloses, loses nothing. It is not like the cases where the principal has received a benefit from the transaction which he retains, and where he will not be permitted to repudiate the authority after accepting and retaining the benefit derived from the transaction.

The judgment must be reversed for the errors pointed out in the charge of the court, and refusal to charge as requested by plaintiffs, and a new trial granted.

SHERWOOD, C. J., and LONG, J., concurred.

MORSE, J. I think this judgment should be affirmed.

CAMPBELL, J., did not sit.