JOHN HURLEY AND TIMOTHY HURLEY v. SAMUEL C. WATSON.

[See 68 Mich. 531.]

*Principal and agent—Ratification—Evidence.*

1. Evidence that a clerk kept his private account with his employers on their ledger for six or seven years, and that one of the firm examined the accounts appearing on the ledger almost every day, justifies the jury in finding that the employers had knowledge of the account of the clerk, and how it was made up; it appearing that the clerk was paid from month to month, and that the only account he was entitled to have with them should appear upon the time-book.
2. The employers cannot be said to have acquiesced in an arrangement whereby goods sold to a customer were charged by the clerk to himself in said ledger account until they had some notice or knowledge of the manner in which his account was kept.

Error to Wayne. (Brevoort, J.) Argued April 21, 1892. Decided June 10, 1892.

*Assumpsit.* Plaintiffs bring error. Reversed. The facts are stated in the opinion, and in 68 Mich. 531.

*W. F. Atkinson,* for appellants.

*Edwin F. Conely* and *Orla B. Taylor,* for defendant.

Long, J.   This case was before this Court in the January term of 1888, and is reported in 68 Mich. 531. The facts are very fully stated in the former opinion. The cause was then reversed, and sent back for a new trial. It has been retried before a jury, and plaintiffs recovered verdict and judgment for $13.90. On the trial the plaintiffs claimed the right to recover $513.20.

In the present case the court below instructed the jury as follows.

"1. I leave it for you to say if there is any evidence in this case that P. J. Clark, with whom the defendant claims to have turned his account, was authorized to make such settlement."

"2. If you believe from all the evidence that the plaintiffs knowingly acquiesced in the course of dealing between Clark and Watson, you are at liberty to find a ratification thereof by them, and in such case you are to render a verdict in favor of the plaintiffs for $13.90."

"3. It is enough if John Hurley was aware of the course of dealing, and acquiesced in it, to bind the firm, —that is, if John Hurley knew of the course of dealing, how it was being done, that would be sufficient to bind his brother."

Both of the Hurleys testified that the first intimation either of them had of the turning of the Clark account with Watson was after Clark left their employment, and they had Watson's account made out for the balance of $110, as appeared by their books. It is not claimed by the defendant that he ever told the plaintiffs of the arrangement he had with Clark, but the defense is that the plaintiffs ought to have known what was in their books. The ledger account of Mr. Watson, as shown upon plaintiffs' books, shows this coal charged to him, and certain credits given from time to time, as though

payments had been made in cash; so that an examination of Mr. Watson's ledger account by plaintiffs would not exhibit to them that Clark was offsetting his individual account with Watson, and giving Watson credit therefor.

Mr. Clark was the chief clerk in plaintiffs' office, and had general charge of the books. He made most of the original entries in the day-books, made out bills, collected bills at the office, took orders for coal, and settled with customers. He had no express authority to turn or apply his individual debts upon debts due the firm. The men in plaintiffs' employ, including Mr. Clark, were paid as often as once a month for their services, and these payments were kept upon time-books, and not posted in the ledger. It appears that Clark kept an individual account upon the firm's ledger. The plaintiffs testified that they never knew of this account upon their books.

Upon the former record it was not shown that the plaintiffs made any examinations of their books, but upon the present record it was shown upon the part of the defendant that John Hurley looked at the books about every day, and that Timothy had been seen casually looking them over. It was also shown that in Clark's ledger account, kept upon plaintiffs' books, items were entered of charges against Clark as turned upon Watson's account. Upon this state of facts, it was claimed by defendant's counsel that there was some evidence to go to the jury having a tendency to show that the plaintiffs knew of the dealings between Clark and Watson; that though the plaintiffs testified they had no knowledge of such dealings, yet, under the facts proven, it was a question for the jury to determine whether they had such notice or knowledge. It was also contended that, the jury having found this fact, it was a question

for their consideration and determination whether the silence of the plaintiffs, under the circumstances, afforded a reasonable presumption of ratification of those dealings; that the case, under the testimony appearing upon this record, falls directly within the principle laid down by this Court in the former opinion, under the statement made by Mr. Justice CHAMPLIN that,—

"If the plaintiffs knew of the manner of dealing between Clark and Watson, and kept silent and suffered it to go on without objection for the length of time shown in the testimony, the jury would have been warranted in finding that they had ratified that course of dealing. But there must be evidence tending to prove such knowledge."

We think there was some testimony, which the jury might properly receive, as tending to show that the plaintiffs had knowledge of the contents of their books under the circumstances before stated. It would seem strange that Clark could keep his account on plaintiffs' ledger for six or seven years, and they, examining the books constantly, should not have some knowledge of the contents of that account, when, according to their statement, he was paid from month to month, and the only account he was entitled to have should appear upon the time-book. As was said in the former opinion:

"There is a presumption that a person is cognizant of the contents of his own books of account."

Added to this presumption in the present case is the positive testimony of witnesses that the plaintiffs, or one of them, did actually examine the accounts appearing upon the ledger almost every day; and the jury, with this fact before them, might well say not only that plaintiffs had knowledge that Clark had an account upon their books, but that they knew how that account was made

up. The court was not, therefore, in error in submitting the question to the jury as to whether there was any evidence in the case showing that Clark was authorized to make such settlement with defendant.

The court, however, was in error in limiting the recovery of the plaintiffs to the amount of $13.90. The entries in Clark's account which would have given the plaintiffs any information that Clark was turning Watson's coal account, and charging the same to himself in account, were not made until more than $300 worth of coal had been delivered to Watson. It cannot be said that plaintiffs acquiesced in this arrangement until they had some notice or knowledge of the manner in which the accounts were being kept by Clark. That part of the account, therefore, which had been made prior to the time that these facts came to their attention, could not be affected by such notice, and the plaintiffs would not be barred from recovering at least that part of their claim.

For this error judgment must be reversed, and a new trial ordered.

McGRATH, GRANT, and MONTGOMERY, JJ., concurred with LONG, J.

MORSE, C. J. I think no error was committed in the trial of this case; that the whole question was for the jury, and properly submitted to them.