DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY CO.
*v.* OWOSSO SUGAR CO.

1. CARRIERS—ACTION—DEMURRAGE—PARTIES—ASSIGNMENT.
   In a suit by plaintiff railway company for demurrage charges, parol evidence that plaintiff and other railways to whom defendant was alleged to be indebted were operated as part of what is commonly known as the "Grand Trunk Railway System" was properly rejected by the court, as said testimony was immaterial unless it showed an assignment of the different claims to plaintiff, or that these several lines were operated by plaintiff.

2. SAME—PARTIES.

> Where plaintiff and the other railway lines operating under the trade-name of "The Grand Trunk Railway System" maintain a separate organization, and make separate reports to the State, plaintiff could not recover demurrage charges due to the other lines of railway.

3. PRINCIPAL AND AGENT—RATIFICATION—QUESTION FOR JURY—SET-OFF AND RECOUPMENT.

> In an action by plaintiff railway company for demurrage charges, wherein defendant gave notice of set-off, claiming plaintiff was indebted to it on a contract made by plaintiff's claim agent whereby defendant reworked a carload of sugar damaged by a tornado while in plaintiff's possession, it was a question for the jury whether such agreement, which was beyond the agent's authority, but of which plaintiff was advised before the work was done, was ratified by plaintiff, who kept silent and did not repudiate it till eight months later, and then not on the ground of want of authority, but because the damage was caused by act of God.

4. CONTRACTS—CONSIDERATION—ACT OF GOD.

> Where defendant delivered to plaintiff railway company a carload of sugar, which was damaged by a tornado while yet in defendant's yards, and it was defendant's claim that the sugar had been delivered to the consignee by making delivery to the carrier and its duty was at an end, and plaintiff's claim agent, assuming that there was a liability, contracted with defendant to rework the sugar at a specified price, it cannot be contended that there was no consideration because the damage was caused by an act of God, as the reworking of the sugar by defendant was the consideration for plaintiff's promise.

5. CARRIERS—ACT OF GOD—NEGLIGENCE—LIABILITY OF CARRIER.

> Whether plaintiff railway company was liable to either consignee or consignor for damages caused by a tornado to a carload of sugar on the ground of negligence,—quære.

6. EVIDENCE—ADMISSIONS—DEMURRAGE—PARTIES—CARRIERS.

> A letter from defendant to the Grand Trunk Railway System, a trade-name under which several railway lines were operating, making a claim for delay in transporting beets to its factory during the previous season, and admitting it was withholding payment of demurrage charges pending

a settlement, was not an admission that it owed anything to plaintiff, one of the lines operating under said trade-name.

Error to Shiawassee; Miner, J. Submitted January 11, 1916. (Docket No. 90.) Decided September 26, 1916.

Assumpsit by the Detroit, Grand Haven & Milwaukee Railway Company against the Owosso Sugar Company for certain demurrage charges. Defendant pleaded the general issue with notice of set-off. Judgment for defendant. Plaintiff brings error. Affirmed.

*L. C. Stanley* and *Austin E. Richards,* for appellant.

*Seth Q. Pulver,* for appellee.

BIRD, J. Plaintiff brought suit in assumpsit to recover certain demurrage charges amounting to $315, for which it claimed defendant was liable. Defendant pleaded the general issue and gave notice of set-off. The set-off arose in this way: On November 10, 1911, during business hours, defendant delivered to plaintiff a car load of sugar, consigned to Bryant, Sisson & Co. at La Crosse, Wis. On the night of November 11th, while the car was yet in plaintiff's yards, a tornado, which passed over Owosso and vicinity, unroofed the car and damaged the sugar. Upon learning of the damage, Mr. Dobel, an assistant claim agent, who resided at Battle Creek, came to Owosso, examined the sugar, and made an arrangement with defendant, whereby it was to rework the sugar and furnish new packages for the same at 1¼ cents per pound. Within two or three days thereafter, plaintiff delivered the sugar to defendant, and the same was reworked and put in condition for reshipment in accordance with the agreement. Subsequently the agreement made by Dobel was repudiated by the plaintiff; the claim being

that the agreement was not within the scope of Dobel's authority. The trial resulted in a verdict for defendant for $513.10, and plaintiff has assigned error.

1. Upon the trial plaintiff not only attempted to recover $54 which had accrued to it as demurrage charges upon its own line, but also sought to recover certain demurrage charges which had accrued to other lines of the Grand Trunk Railway System as follows, viz.: The Grand Trunk Western Railway, Toledo, Saginaw & Muskegon Railway, Cincinnati, Saginaw & Mackinaw Railway, and the Pontiac, Oxford & Northern Railway. Parol proof was offered to show that plaintiff railway and the foregoing lines were a part of what is commonly known as the "Grand Trunk Railway System," but the testimony was rejected, the court stating that if the agreement between the several lines of railway was not in writing, it could be shown by some one present who heard the agreement. The trial court was not in error in rejecting the testimony. Even if the general agreement under which these lines are operated had been shown, the testimony would have been immaterial, unless it showed what would amount to an assignment of the different claims to the plaintiff, or that these several lines were operated by plaintiff. Neither showing was made or attempted. The Grand Trunk Railway System, so called, is not a corporation. The name is but a trade-name; but, if it were a corporation capable of suing and being sued, proof of such fact would not entitle the plaintiff to recover for demurrage which belonged to the Grand Trunk Railway System. The several railways mentioned are Michigan railway corporations, and maintain a separate organization, and make separate reports to the State. It is not suggested, nor are we able to see, upon what theory plaintiff railway could recover demurrage charges due to the other lines of railway by showing that they and it were operated by

the Grand Trunk Railway System.   There was some claim that these charges were terminal charges, but no proof was offered that plaintiff had paid any demurrage charges for the other lines in the regular course of business, or had become liable to pay any, and no such claim was made in the declaration.   The plaintiff was permitted to recover demurrage charges which had accrued to its own line, but not those which had accrued to the other lines.   Under the pleadings and proofs plaintiff was not entitled to recover beyond this.

2.  The trial court instructed the jury that under the testimony, Mr. Dobel's agreement with defendant to rework the sugar was not within the scope of his authority, but he submitted the question to them whether defendant did not ratify the agreement.   Plaintiff insisted that this instruction was error because there was no proof of ratification.   It appears that the general claim agent of the plaintiff railroad at that time was Mr. E. Arnold, who resided in the city of Montreal, Canada, and that Mr. Dobel was an assistant, with the title of "Lost Freight Agent."   It was shown by plaintiff that Mr. Dobel had no authority to adjust such claims, although he had the power to investigate them.   Speaking as to the extent of his authority, he testified:

"My business is to look after unclaimed, refused freight, damaged freight, lost freight.   That is all."

The record shows that Mr. Dobel, learning of the damage, came to Owosso, and in company with Mr. Mason, the local agent, called upon defendant.   After being informed by the defendant that it did not regard the sugar as belonging to it, Mr. Dobel made an agreement with them to rework the sugar.   Dobel testifies that within 24 hours he reported these facts to his superior at Montreal.   Within two or three days there-

after, the sugar was delivered to the defendant, and the work was done without any protest from Mr. Arnold or any other agent of the company. In July of the following year, the Dobel agreement was repudiated by the plaintiff, but it was not repudiated upon the ground that Dobel did not have the authority to make it. It was repudiated upon the ground that the damage was the result of the act of God. We think these facts furnished the jury a basis for finding that the plaintiff had ratified the agreement with Mr. Dobel. It is shown by the uncontradicted testimony that plaintiff was advised of the damage and the agreement with defendant before the work was done. After being so advised, it delivered the sugar to defendant. From this act and its silence thereafter an acquiescence on its part could properly be inferred by the jury. *Hurley* v. *Watson,* 68 Mich. 531 (36 N. W. 726).

It is further contended in this connection that the plaintiff is not liable because there was no consideration for the agreement, the damage having been caused by the tornado, which was an act of God. This contention is lacking in force, if we keep in mind the theory of defendant's claim. The position of defendant was after the damage accrued that the sugar had been delivered to the consignee by making delivery to the carrier, and that its duty in the premises was at an end. In the face of this contention, plaintiff made a contract with defendant to rework the sugar. The reworking of the sugar was the consideration for plaintiff's promise. Whether plaintiff was liable to either consignee or consignor for the damage to the sugar on the ground of negligence is another question which we need not consider. Dobel evidently assumed that there was a liability, or that the consignee would make such claim, and, in order to avoid it, entered into the contract with defendant. It may be added by way of comment that if any error was committed by the

trial court in connection with this question, or the one involving the authority of Dobel, it was not made against the plaintiff.

3. Plaintiff requested a directed verdict. This was based upon a letter written by defendant to the Grand Trunk Railway System in July, 1912, making a claim for delay in transporting beets to its factory during the previous season. At the close of the letter it stated:

"We are withholding payment of your charges against this company for demurrage accruing during the past season, pending a settlement of this claim."

The difficulty with this contention is that this claimed admission was made to the Grand Trunk Railway System, and not to the plaintiff. The defendant conceded that it owed the plaintiff $54 for demurrage, and it was taken into account by the jury. The most that can be said of the claimed admission is that it was a conditional promise to the Grand Trunk Railway System to pay whatever demurrage it owed to the several lines, if that company would satisfy its claim for damages on account of delayed transportation. It was not an admission that it owed plaintiff anything.

There are numerous assignments of error, but most of them are answered by the questions already considered. As to the remaining ones, we think they are without merit.

The judgment of the trial court is affirmed, with costs to the defendant.

STONE, C. J., and KUHN, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred. OSTRANDER, J., did not sit.