CUTLER *v.* GRINNELL BROTHERS.

1. PRINCIPAL AND AGENT—AUTHORITY—EVIDENCE.

In nonjury action of assumpsit to recover for rewiring basement of a building occupied in part by defendant corporation's branch retail store, evidence clearly showed defendant had not given its local manager express authority to have the work done.

2. SAME—APPARENT AUTHORITY—EVIDENCE.

When a principal cloaks his agent with apparent authority to do an act not actually authorized, the principal is bound thereby but the apparent authority must be traceable to the principal and cannot be established by the acts and conduct of the agent.

3. SAME—AUTHORITY—INQUIRY BY THIRD PARTY.

A person who deals with an agent is bound to inquire into the extent of his authority and ignorance thereof is no excuse and dealings or engagements of the agent beyond the scope of his authority do not bind the principal.

4. SAME—APPARENT AUTHORITY—BRANCH RETAIL STORE MANAGER—CONSTRUCTION WORK—EVIDENCE.

Where plaintiff had been apprised that defendant's branch retail store manager did not have authority to contract for extensive construction work by reason of a remodeling contract shortly theretofore completed and knew that the local manager had not submitted the instant job to the principal, at the behest of building owner, the principal may not be held liable for payment therefor; since the local manager did not have apparent authority to engage plaintiff for work benefiting others as well as defendant and which, together with the previous work, totalled more than sum which defendant had rejected.

REFERENCES FOR POINTS IN HEADNOTES

[2] 2 Am Jur, Agency, §§ 101, 103.
[3–5] 2 Am Jur, Agency, §§ 95, 97.
[4, 5] 2 Am Jur, Agency, § 98.
[6] 3 Am Jur, Appeal and Error, § 823.

5. SAME—APPARENT AUTHORITY—BRANCH RETAIL STORE MANAGER.
   While a branch manager in general charge of a local retail
   store may make contracts for sale or purchase of merchandise
   and conduct the local business and bind the principal within
   the ambit of apparent authority, such manager does not have
   apparent authority to contract for construction work of an
   extensive nature, especially where it would benefit others than
   his principal.

6. APPEAL AND ERROR—QUESTIONS REVIEWABLE—APPARENT AUTHOR-
   ITY OF AGENT—STATUTE OF FRAUDS—LIABILITY OF OWNER FOR
   CONSTRUCTION WORK.
   Where it is determined that defendant corporate lessee of part
   of building was not liable for work done and materials fur-
   nished because its local agent was not clothed with apparent
   authority to obligate it, whether the agent's oral promise, if
   any, to see that plaintiff was paid for the job, was a promise
   to pay the debt of another, hence void under the statute of
   frauds, and questions as to owner's liability are not considered
   (CL 1948, § 566.132).

Appeal from Lenawee; Rathbun (Arthur), J.
Submitted June 16, 1949. (Docket No. 63, Calendar
No. 44,472.) Decided September 8, 1949.

Assumpsit by Harry K. Cutler, doing business as
Cutler Engineering & Construction Company,
against Grinnell Brothers, a Michigan corporation,
for labor and material expended in rewiring base-
ment. Judgment for plaintiff. Defendant appeals.
Reversed and remanded for entry of judgment for
defendant.

*Moran & Mack,* for plaintiff.

*Fischer, Brown, Sprague, Franklin & Ford*
(*David G. Barnett,* of counsel), for defendant.

BOYLES, J. Plaintiff brought suit in the circuit
court for Lenawee county to recover $1,160.49 for
labor and material expended in rewiring the base-

ment of a building which was occupied, in part, by the defendant as a tenant. Upon trial by the court without a jury, plaintiff had judgment and the defendant appeals. The facts and circumstances are mostly undisputed.

The defendant Grinnell Brothers has main offices in Detroit and operates a retail store in Adrian, of which one Mr. Morris is the local manager. The building is owned by the Joslin family, Grinnell Brothers lease a part of it, and there are 2 other tenants, the Economy Shoe Store and the "KP Hall." Defendant's local manager, Mr. Morris, arranged with the plaintiff to remodel the ground floor for use by the defendant. The work involved removal of a partition, installing soundproof booths, rewiring where the partition was taken down, moving and rewiring fixtures. Plaintiff's first estimate of the expense was $1,500, including redecorating; Morris told plaintiff that he felt he should discuss it with the Detroit office. Grinnell Brothers objected that it was more money than they wanted to put in. At Mr. Morris' request, plaintiff prepared a written estimate to be sent to the Detroit office for approval. The amount then set for the job was $750 and plaintiff's estimate, among other things, provided for wiring as follows:

"Remove that portion of electrical wiring in the partitions that are to be removed and rewire with new material. New electrical wiring includes only the portion of the store that is to be remodeled."

Defendant in Detroit approved the work, plaintiff proceeded to perform accordingly, submitted an invoice to the defendant for $638.71 and it was paid by check from Detroit. In the record, this job is called the "May" contract, and is not directly involved in the instant case.

After the "May" job was completed it was necessary that the wiring be approved by the city electrical inspector before it could be put into use. The city electrical inspector came to check the wiring, approved the work that had been done, and during the course of his inspection went into the basement. He found the entire basement wiring was old and defective and insufficient to carry service of electrical energy for defendant's added requirements with those of the other customers. Defendant's local manager was informed that the new wiring could not be connected up until the basement wiring was replaced. Thereupon defendant's local manager told plaintiff to go ahead with the basement job, and plaintiff did so. When it was completed, the cost of plaintiff's labor and material amounted to $1,160.49, and at that point the present dispute came into being. Who was to pay plaintiff for the basement job? The plaintiff claims that defendant's local manager had authority to bind the defendant to pay. The defendant-appellant claims that its agent Mr. Morris had neither actual nor apparent authority to bind it to pay for rewiring the basement. The testimony is quite conclusive that the defendant Grinnell Brothers did not expressly authorize or empower its local manager to have the basement rewired, or give Mr. Morris any express authority as its agent to bind the defendant to pay for the work. The essential question in the case is whether Mr. Morris had such apparent authority as to bind his principal.

When plaintiff started the basement job, the situation was as follows: The remodeling job had been completed and paid for; defendant could not make use of it without the basement being rewired; defendant's local manager, when so informed, told the plaintiff to go ahead and do the work but did not obtain an estimate or take the matter up with his

principal in Detroit. There are 2 versions as to what Mr. Morris told the plaintiff about payment. The plaintiff testified:

"*A.* He (Morris) said that Grinnell Brothers would authorize payment of doing the work. * * * At that time Mr. Morris authorized us to go ahead with the work, and he used this statement, 'Grinnell Brothers will see that you receive your money.' * * *

"*Q.* What inquiry did you make as to the extent of Mr. Morris' authority?

"*A.* I made no inquiry, Mr. Barnett. I don't think that it is justifiable for me to do business with a man and then to make inquiry as to whether he is or he isn't manager of a store. * * * In other words, I had to rely on what Mr. Morris told me. I never received any instructions from any other officers of Grinnell's regarding the work. In my conversations with Mr. Morris I relied on what he said as being the statement of Grinnell Brothers. I had no reason to doubt but what he had authority to make this sort of arrangement. * * * I never had any written authority from anyone in connection with Grinnell Brothers to do any work. The only transactions with Grinnell Brothers have been with Mr. Morris. They have all been oral. * * *

"*Q.* The net result of the conclusion you drew from your conversation with Mr. Morris was that he would guarantee payment?

"*A.* That's right."

Mr. Morris, as a witness for the defendant, testified:

"After the wiring had been completed on the first floor the city electrical inspector came in to check the work. During the course of his inspection he went into the basement and said that the entire basement wiring was defective and something had to be done. I talked to Mr. Cutler about it—the amount of wiring that had to be done. I said I did not think

that was our obligation to take care of that. I would have to call the owner of the building."

The Joslin family were the owners of the building. About 2 days after the basement job was started the owners were called in by Mr. Morris; and two of the Joslin family, with the plaintiff, the wiring contractor and Mr. Morris, went into the basement. Mr. Morris testified that he told Joslins he didn't think it was the obligation of the defendant to take care of it, and that—

"I talked to Theodore Joslin and he told me not to call the Detroit office. He said he didn't see any point in worrying the home office about this. He said we will take care of it.

"*Q*. And that conversation is something that you then told Mr. Cutler?

"*A*. Yes.

"*Q*. What did Mr. Cutler say after you told him that?

"*A*. Well, he just said OK.  *  *  *  Mr. Cutler, as I recall it was the next day, that asked me, told me, come upstairs, said, 'I understand these Joslin boys aren't such good pay. And will the Grinnell Brothers back us up on it?' Or will you back me up on it, or Grinnell Brothers, which is the same thing. I said we would certainly help him try to collect his money."

The record leaves no room for doubt but that the plaintiff did not at any time contact the defendant Grinnell Brothers about the basement job before it was completed. Plaintiff's sole contact was with Mr. Morris. After the job was completed plaintiff billed the owners of the building for $1,160.49 for his labor and material. The owners refused to pay, whereupon plaintiff brought the instant suit against Grinnell Brothers, on the theory that defendant's agent had bound the defendant to pay.

The record is clear that the defendant Grinnell Brothers did not know about the basement wiring job until after that work was completed. It was entirely outside of the estimate submitted by plaintiff to the defendants; in fact, was contrary to the estimate in that the electrical wiring for the remodeling job was expressly limited to "the portion of the store that is to be remodeled." The defendant can be held liable only on the basis that Morris, as agent for Grinnell Brothers, had the *apparent* authority to engage plaintiff to do the basement wiring job. The evidence clearly shows there was no such *express* authority from defendant to Mr. Morris. Unless there was apparent authority, plaintiff must fail. Such apparent authority cannot be established solely by the acts and conduct of the agent.

"When a principal cloaks his agent with apparent authority to do an act not actually authorized, the principal is bound thereby. * * *

" 'The apparent authority for which the principal may be liable must, however, be traceable to him and cannot be established by the acts and conduct of the agent.' " *Richards* v. *Lowrie & Webb Lumber Co.,* 317 Mich 42.

"A person who deals with an agent is bound to inquire into the *extent* of his authority, ignorance of *which* is no excuse." *Hurley* v. *Watson* (syllabus), 68 Mich 531.

"One dealing with an agent is bound to inquire into the extent of his authority, not from the agent, in the absence of written evidence thereof, but from the principal, if accessible; and dealings or engagements of the agent beyond the scope of his authority do not bind the principal." *Delta Lumber Co.* v. *Williams* (syllabus), 73 Mich 86.

To the same effect, see 1 Mechem on Agency (2d ed), § 743 *et seq.*

There is nothing in the record to indicate that plaintiff made any attempt to find out from the defendant whether the branch manager had authority to have the basement rewired. It was definitely outside of the job which the plaintiff had already been engaged to do, and which had been completed. The record indicates that plaintiff had already been put on notice, by what had occurred in connection with the "May" contract, that as to construction work Mr. Morris had only limited authority, and that such a contract required the approval of the home office. During negotiations for the "May" contract plaintiff prepared an estimate (exhibit 1) at the request of Mr. Morris "so it could be submitted to Detroit for approval," and during negotiations for the basement job plaintiff was advised by Mr. Morris that he had not called defendant's home office for approval of the basement job because Mr. Joslin (an owner) had told him not to call Detroit. A further indication that plaintiff had notice or knowledge of the local manager's lack of authority to have the basement rewired is shown by the amount involved. Grinnell Brothers had demurred to the first estimate of $1,500 expense for the remodeling job. Plaintiff was aware of that fact when he submitted an estimate of $750, and actually charged $638.71. The additional basement expense, $1,160.49, would bring the total amount considerably above the original estimate which plaintiff knew Grinnell Brothers had rejected. Plaintiff also knew that Mr. Morris was not submitting the basement job to defendant for approval.

The trial court, in his opinion, stated:

"It is undisputed that Mr. Morris was the manager of defendant's Adrian store. To the average person, the manager means a person clothed with authority to act in all matters pertaining to the op-

eration of the particular establishment. When a person enters a mercantile place and wants to make special or particular inquiry, the usual and natural remark is, 'I want to see the manager.' That common expression comes from the general understanding that the manager is the one in authority."

That is not sufficient. Obviously, a manager is in general charge of the store. He makes contracts for sale or purchase of merchandise, and the conduct of the local business, which are binding on his principal. They are within the ambit of apparent authority. But we decline to hold that the manager of a local store has *apparent* authority to contract for construction work of an extensive nature which, in this case, would benefit not only his principal, but also the owners of the building and other tenants of the premises. Such an act was not within the *apparent* authority of Mr. Morris, and the defendant is not bound thereby. The acts and conduct of the agent are not sufficient to prove his authority. The defendant is not bound by the act and conduct of Mr. Morris in employing plaintiff to rewire the basement.

In view of the above conclusion, it is not necessary to consider another question raised, *i.e.*, whether the oral promise, if any, made by Mr. Morris to see that plaintiff was paid for the basement job, was a promise to pay the debt of another (the owners), hence void under the statute of frauds.* Nor need we consider whether the owners, who are not parties herein, had incurred the indebtedness, or are bound to pay.

---

* CL 1948, § 566.132 (Stat Ann 1947 Cum Supp § 26.922).

Reversed and remanded for entry of judgment for the defendant, with costs to appellant.

SHARPE, C. J., and BUSHNELL, REID, NORTH, DETH-MERS, BUTZEL, and CARR, JJ., concurred.