**THE EMPLOYERS' LIABILITY ASSUR-ANCE CORPORATION, Ltd., a corporation organized and existing under the laws of England, Plaintiff,**

v.

**Ray HOWEY, Willard Sullivan and Evelyn Sullivan, Defendants.**

**Civ. No. 1342.**

United States District Court,
E. D. Michigan, N. D.

Dec. 2, 1954.

Stanton, Montgomery, MacKenzie & Cartwright, Saginaw, Mich., for plaintiff.

Arthur W. Murphy, Saginaw, Mich., for defendant.

PICARD, District Judge.

The Employers' Liability Assurance Corporation has brought action for declaratory judgment asking this court to relieve it from liability on a certain policy of insurance.

## Findings of Fact

The facts are not disputed. In August, 1948, Howey purchased a public liability (automobile) insurance policy from plaintiff through one Clarence Keyser, solicitor for Schwan, Van Auken, Graebner Inc., of Saginaw, Michigan, plaintiff's General Agents.

Under that policy, the insurer agreed to pay, on behalf of insured, all sums up to limits of the policy for which insured would become liable as damages sustained by any person caused by accident arising out of the ownership, maintenance or use of the automobile described in the policy, or any automobile replacing the one described therein, but subject to certain conditions found in Paragraph IV (a) (4) of the insuring agreement as follows:

"Newly Acquired Automobile * * * an automobile, ownership of which is acquired by the named Insured who is the owner of the described automobile, if the named Insured notifies the Company within thirty days following the date of its delivery to him, and if either it replaces an automobile described in this policy * * * The named Insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile."

Between 1948 and 1952, Howey changed automobiles some ten times and on each occasion gave notice of such change to Keyser, the solicitor, who, in turn, relayed the information to plaintiff through its General Agent. Keyser collected all premiums and each time he would receive Howey's application for a change to another car he delivered a new policy to him for the newly acquired car. In fact, Keyser was the only person representing plaintiff with whom Howey had ever come in contact.

Some time during the year 1952, Keyser told Howey it was not necessary to give notice every time Howey changed automobiles provided there would be no increase in premium to be paid by Howey and provided, of course, the premium for the car that he was exchanging had been paid for the year. Later, in November of that year, Howey traded his 1952 Chevrolet for a Ford but never gave any notice of the change to plaintiff through Keyser or anybody else. It was not until January of 1953, when plaintiff, through Keyser, attempted to issue a new policy on the Chevrolet, that it learned that Howey had traded the Chevrolet plaintiff supposed it had been covering, three months previously. When it became so informed, it issued a policy covering the 1950 Ford then owned by Howey.

We deem the following facts to be of particular importance. No suggestion was made by plaintiff to Howey that the Ford car which he had received in trade for his Chevrolet had not been insured during November and December of 1952, so either plaintiff accepted any liability that might have been incurred during those two months, or it accepted a premium for insurance for two months, for which it had given no insurance. And no rebate for those two months was ever given or offered to Howey and apparently if any accident had happened to that Ford car on December 31st, 1952, Howey was covered since plaintiff was undoubtedly ready to assume its obligation to pay.

Plaintiff, therefore, was undoubtedly aware in January, 1953 that Howey was not reporting changes in his cars, because it issued a new policy on the Ford which it knew it had covered for two months without notice of the change from the Chevrolet to the Ford. Nor did plaintiff ever direct Howey's attention to the fact that he must always report any such exchange of cars if he expected his policy to cover that car. It does not appear, however, that the plaintiff was aware of what Howey had been told by Keyser, but it follows that at least the General Agent knew all the details of the transaction, so that any curtailment that might cover Keyser's authority as a solicitor certainly does not apply to the General Agent.

In August, 1953, while driving a 1950 Pontiac, which had replaced the Ford more than thirty days before the August date, Howey injured Evelyn and Willard Sullivan, the other two defendants. No notice of that exchange had ever been given.

### Conclusions of Law

We are confronted with this question of law: Is plaintiff estopped from denying Keyser's authority to interpret or construe the policy or to waive the notice?

█ Ordinarily, where an insurance policy requires that notice be given, when insured changes automobiles, failure to give notice avoids liability on the part of the insurer. Mitcham v. Travelers Indemnity Co., 4 Cir., 127 F.2d 27; Continental Casualty Co. v. Trenner, D.C., 35 F.Supp. 643; Jamison v. Phoenix Indemnity Co., D.C., 40 F.Supp. 87; Province Washington Indemnity Co. v. Edes, D.C., 109 F.Supp. 813.

█ It is also admitted that a solicitor has no authority to waive substantial rights of the insurer granted by terms of the policy. Gambino v. Northern Insurance Co., 234 Mich. 651, 209 N.W. 119; Kilburn v. Union Marine & General Ins. Co., Ltd., 326 Mich. 115, 40 N.W.2d 90; Serbinoff v. Wolverine Mutual Motors Ins. Co., 242 Mich. 394, 218 N.W. 776.

And it has been rather consistently held that a solicitor has no authority to construe an insurance contract. Serbinoff v. Wolverine Mutual Motors Ins. Co., supra; Union Life Ins. Co. v. Burk, 10 Cir., 169 F.2d 235, unless the contract is ambiguous. U. S. Quarry Tile Co. v. Massachusetts Bonding & Ins. Co., 6 Cir., 71 F.2d 400.

█ And finally it is also a fundamental principle of law that the authority of the agent is not determined by the agent's conduct. Cutler v. Grinnell Brothers, 325 Mich. 370, 38 N.W.2d 893. See also Mitchell v. Western Fire Ins Co., 272 Mich. 204, 261 N.W. 300.

None of these, however, appears to be the question here. In order to determine that question it must be remembered that no harm came to plaintiff here as the result of the failure of Howey to give the notice, either directly or through its agent.

█ Then, too, plaintiff had always held Keyser out as its agent to take care of notices, although the plaintiff itself is supposed to receive the notice. It had always accepted the fruits of his efforts. The carrying of public liability is important to the owner of a car because under the Michigan law, if he fails to pay a judgment rendered against him, he may be deprived of his right to drive a car. In Michigan a car is not a luxury; it is a necessity. For five years plaintiff had accepted the notices that had been given by Howey to Keyser and issued new policies thereon. And plaintiff does not deny that Keyser told Howey in 1952 that those notices would no longer be required as long as there was to be no increase in premiums.

Admittedly there is no testimony that Keyser ever told plaintiff's agent or plaintiff of the information he had given to Howey, but plaintiff's general agent knew in January that evidently Keyser had received some information along those lines. It did nothing to protect the insured. Now can the company wait to see whether an accident is going to happen, and if no accident happens accept the premium money, but if an accident does happen escape liability under the claim that a technicality has not been complied with? We think not. Ash Grove Lime and Portland Cement Company v. Southern Surety Co., 225 Mo. App. 712, 39 S.W.2d 434. Whether you call this estoppel or waiver is immaterial. It savors of both. Even the company itself, if plaintiff is to be believed, although we would require further evidence, acknowledged its liability by a post-card.

But it is also a question of interpretation or construction, as we find in 29 American Jurisprudence at Section 165:

> "Section 165, Interpretation of Contract by Parties or Agents. * * So, where there is uncertainty or ambiguity in the terms of a policy, and both parties have construed it

in such a manner as to import liability to the insurer thereunder and have acted upon the contract in accordance with that interpretation, such construction will be adopted by the Court. Similarly, if the insured and the officers of the insurer have acted with reference to a policy so as to indicate an understanding as to the effect and intent of its provisions such understanding will have a persuasive effect in the construction of the policy."

We believe that it can be admitted that all the terms of a policy of insurance are not always read, or, if read, are easily understood. The interpretation or construction placed by Keyser, an experienced insurance man, was communicated to Howey who was not in the insurance business. Keyser thought he was interpreting the contract correctly, and while he had no right ordinarily to waive a requirement of the policy, Gambino v. Northern Insurance Co., supra, his interpretation or construction was not so illogical as to put anybody on guard. Howey wanted protection. The insurance company wanted the premium. There was no danger here of double coverage. Howey didn't own a fleet of cars and evidently Keyser knew this.

We have read the case of Kaczmarck v. La Perriere, 337 Mich. 500, 60 N.W. 2d 327 which at first reading appeared to support plaintiff's position. However, on more careful scrutiny it appears to us to be as much for the defendant as for the plaintiff. In that case the policy covered an automobile which we will call car "A". Car "A" was exchanged for car "B" and the terms of the policy were not complied with. Car "B" was exchanged for car "C" and then the terms of the policy were complied with so far

as "C" is concerned. The court held that the compliance by the owner of the car "C" with the policy terms revived the policy. If plaintiff's contention is correct, there would be nothing to revive after the owner of car "B" had failed to comply with the policy. At page 506 of 327 Mich., at page 330 of 60 N.W.2d the court stated:

"Clearly it (insurance policy) is to protect the insurer from liability on a risk which it did not elect or choose to assume. It is not designed to serve as a loophole through which insurer may escape liability for loss in connection with the precise risk assumed under the policy by the simple expedient of a retroactive, nunc pro tunc termination of coverage * * *."

In Michigan State Ins. Co. v. William W. Lewis, 30 Mich. 41, there was an insurance policy that was equally as strict as this one. It involved the question of another mortgage. The insurance company agent had been informed that the mortgage was "near $5,300." The mortgagee did not tell the insurance company that he was in arrears and that the amount was more than that. Yet the court held that the policy which issued on that application was good and that the company was estopped from afterwards repudiating the contract for an understatement of the encumbrance. We point out that in that case the insurance company, had it known all the facts, might not have accepted the risk at all. Here the insurance company would have accepted the risk.

See also Westchester Fire Ins. Co. v. Earle, 33 Mich. 143.

For these reasons, our decision is in favor of defendants.