BAY STATE MILLING CO. *v*. SAGINAW BAKING CO.

1. FRAUDS, STATUTE OF—PAROL EVIDENCE OF CONSENT TO CHANGE IN WRITTEN ORDER ADMISSIBLE.

That an order was changed by consent of the buyer after it was signed by him may be shown by parol without offending the statute of frauds.

2. PRINCIPAL AND AGENT—MANAGER HELD OUT AS HAVING POWER TO PURCHASE ORDINARY SUPPLIES.

In placing a manager in charge of its business defendant baking company held him out as one clothed with authority to at least purchase supplies to keep its business in operation for 100 days, and, in the absence of notice to the contrary, one dealing with him had a right to assume. that he had such power.

3. SAME—ORDINARY POWERS OF MANAGER — EVIDENCE — LIMITED AUTHORITY.

In an action by a milling company against a baking company for damages for the breach of a contract for the purchase of 500 barrels of flour, which would be a sufficient supply for only about 100 days, and the purchase of which would ordinarily be within the duties and powers of a manager, evidence of limited authority in the manager was properly rejected by the trial court.

4. WITNESSES—FINANCIAL INTEREST OF WITNESS MAY BE SHOWN.

Since the financial interest of a witness may be inquired into, the trial court was not in error in permitting witnesses to be asked how much stock they held in defendant company.

5. FRAUDS, STATUTE OF—AGENT'S AUTHORITY TO SIGN FOR PRINCIPAL NEED NOT BE IN WRITING.

Where an order for flour showed on its face that defendant was the purchaser, and J., as its agent, signed in its behalf, an objection that it does not comply with the statute of frauds (3 Comp. Laws 1915, § 11835), requiring the order to be "signed by the party to be charged, or his agent in that behalf," is without merit, since the authority of the agent to sign in behalf of his principal

On the general rule that parol evidence is not admissible to add to, vary, or alter a written instrument, see note in 17 L. R. A. 270.

does not have to be in writing, but may be established by extrinsic evidence.

6. EVIDENCE—CREDIBILITY OF WITNESSES—EVIDENCE OF ARREST FOR FORGERY INADMISSIBLE TO PROVE FRAUD IN INSTANT CASE.

Although it is discretionary with the trial court to permit it to be shown, for the purpose of affecting witness' credibility, that he has been arrested for forgery, testimony that he was arrested for forging a chattel mortgage, offered for the purpose of establishing fraud in the case at issue, was not admissible.

7. SALES—CONTRACTS—CONSTRUCTION—REMEDY FOR BREACH.

A provision in a contract for the purchase of flour giving the seller a certain remedy if the buyer refused to perform or the right to "pursue such further remedies as the law may provide," did not purport to fix the sole remedy, but left it optional with the seller, and the latter therefore did not have to acquiesce in the buyer's attempted cancellation, but could maintain an action for damages for the breach of the contract.

Error to Saginaw; Snow (Ernest A.), J. Submitted October 24, 1923. (Docket No. 84.) Decided December 19, 1923.

Assumpsit by the Bay State Milling Company against the Saginaw Baking Company for breach of a contract for the purchase of flour. Judgment for plaintiff. Defendant brings error. Affirmed.

*George C. Ryan,* for appellant.

*Weadock & Weadock,* for appellee.

WIEST, C. J. In October, 1920, defendant operated a wholesale and retail bakery at the city of Saginaw, employing 11 men and using from 5 to 10 barrels of flour a day. Plaintiff's salesman obtained an order for 500 barrels of flour to be shipped from Winona, Minnesota, to defendant at Saginaw, at $12.10 per barrel, "delivery to carrier at shipping point, with freight (basis rate in effect date of sale) allowed to

Saginaw, Mich." · This order was signed "E. Jaku-
bowsky, buyer," and was made subject to confirma-
tion by plaintiff.    Plaintiff refused to confirm at
$12.10 and wanted $12.20 per barrel.    Thereupon
plaintiff's salesman visited defendant's bakery and
claims that Mr. Jakubowsky authorized him to change
the figures $12.10 to $12.20 and he did so, and sent the
corrected order in.    A few days later plaintiff notified
defendant of confirmation of the order at $12.20 per
barrel.    Mr. Jakubowsky denied authorizing any
change in the order and claims he cancelled the order
by letter about a month after receiving notice of con-
firmation and excuses the delay because of his failure
to notice earlier that the confirmation was at $12.20
per barrel.    Plaintiff shipped the flour to Saginaw
and, upon refusal of defendant to take it, sold it in
the market and, as flour took a drop after the order
and was worth but $9.25 in the market when sold
therein, plaintiff brought this suit to recover the dif-
ference between the sale price to defendant and the
market price at which it was later sold and had
verdict and judgment for $1,396.65.    Defendant has
brought the case here by writ of error.    While 50
errors are assigned they fall within groups and will
be so considered.

Was the court in error in permitting parol evidence
to be given of the change in price after the order had
been signed?    Defendant relies upon the statute of
frauds and insists the order as it was when signed
constituted the only admissible evidence.    If the order
was changed after the buyer had signed and by con-
sent of the buyer, it could be shown by parol without
offending the statute of frauds.    *Montana Flour Mills
Co.* v. *Lawrence*, 224 Mich. 21.

Defendant wanted to show limited authority in its
manager to make purchases and was not permitted
to do so.    Was the transaction of such character as
to be beyond the ordinary duties and powers of a

manager and buyer and, therefore, to put the plaintiff upon inquiry as to the authority of the agent it was dealing with? If flour had gone up in price the order would have been a good buy and of daily satisfaction to defendant for a period of from 50 to 100 days, that being the time it would have supplied defendant's needs. In placing Jakubowsky as manager and buyer defendant held him out as one clothed with authority to at least purchase supplies to keep its bakery in operation. It cannot be said that the purchase of 500 barrels of flour for future delivery so clearly transcended the manager's authority as to send the salesman over his head to the board of directors. Business cannot be carried on if a manager's authority to make purchases of material needed to carry on a business for 100 days must be questioned by any one dealing with him and searched out or an order taken at the peril of the seller. In the absence of notice to the contrary plaintiff's salesman had a right to assume that defendant's manager and buyer was authorized to purchase such a needed commodity in its business as flour and in quantity sufficient to carry on the business from 50 to 100 days. Under the circumstances disclosed there was no error in refusing evidence to show less power in the manager than he ostensibly possessed. *Inglish* v. *Ayer*, 79 Mich. 516; *Grand Rapids Electric Co.* v. *Walsh Manfg. Co.*, 142 Mich. 4. When the corporation placed Jakubowsky as manager in charge of its business with authority to buy flour, it could not, as to this purchase, be heard to say that its manager could only buy flour in small quantities. If the quantity ordered was not so large as to reasonably awaken suspicion of the manager's authority in one of ordinary prudence under like circumstances then defendant must abide the order as given. In so holding we do not consider the fact that the manager and buyer was at the time treasurer of the company and held one-quarter of its capital

stock, and that Mr. Nagel, vice-president and also the holder of one-quarter of the stock, at the time approved the giving of the order.   We say this to avoid any misapprehension as to the rule of agency applied.

It is claimed the court erred in permitting witnesses Jakubowsky and Nagel to be asked how much stock they held in defendant company.   The financial interest of a witness in a case may be inquired into.

The order having been signed "E. Jakubowsky, buyer," the point is made that such a signing does not comply with the statute of frauds.   The statute (3 Comp. Laws 1915, § 11835) requires the order to be "signed by the party to be charged, or his agent in that behalf" to make it enforceable.   The order shows on its face that the Saginaw Baking Company was the purchaser of the flour and Jakubowsky, as its agent, signed in its behalf.   Under this statute the authority of the agent to sign in behalf of his principal does not have to be in writing and may be established by the fact he was manager of the business, in active charge thereof, making needed purchases of supplies and exercising apparent authority in the premises. Under the evidence the point is without merit.   See *Heffron* v. *Armsby*, 61 Mich. 505.

Plaintiff's sales agent, who took the order, on re-cross-examination, was asked:

"*Q.* Since the time you gave your testimony here on the stand you have been arrested?
"*A.* Yes.
"*Q.* You have been arrested for forging a chattel mortgage?"

The court sustained an objection to the last question, stating:

"If he has been arrested and convicted of crime, it is perfectly proper to show it."

Was reversible error committed in sustaining the

objection? If the purpose was to affect the credibility of the witness it rested in the discretion of the court to admit or exclude it, and if the purpose was, as now urged, to establish fraud in this transaction by showing fraud in a similar matter, then it was not admissible. *People* v. *LaLonde*, 197 Mich. 76, 79. *Cook* v. *Perry*, 43 Mich. 623, and *People* v. *Seaman*, 107 Mich. 348, 357 (61 Am. St. Rep. 326), cited by counsel, carry no language supporting any rule to the contrary. See, also, *Morain* v. *Tesch*, 214 Mich. 699.

The assignments of error upon the charge of the court have been examined and have no merit.

Defendant claims the contract itself provided the remedy for a breach thereof by defendant and the measure of damages. This is based upon the following provision:

"If the buyer shall refuse to accept any shipments as specified hereunder or fail to perform any of the other terms of this agreement, then the seller may cancel this contract and the buyer shall pay to the seller the entry charge above provided (twenty-five cents per barrel) plus or minus the then market price difference. The seller may also pursue such further remedies as the law may provide."

This provision on its face did not purport to fix the sole remedy and the measure of damages, but left it optional with the plaintiff to pursue such remedy and have such damages or pursue such further remedy as the law provides. Plaintiff did not have to accept defendant's attempted cancellation of November 8th.

We find no reversible error and the judgment is affirmed, with costs to plaintiff.

FELLOWS, McDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.