BRUSSLAN *v.* LARSEN.

1. PRINCIPAL AND AGENT—SCOPE OF AUTHORITY—LIABILITY OF AGENT.
   An agent acting outside the scope of authority conferred upon him by his disclosed principal renders himself personally liable on any contracts made on behalf of his principal.

2. SAME—SCOPE OF AUTHORITY—LIABILITY OF AGENT.
   An agent acting within the bounds of authority conferred by a disclosed principal does not thereby render himself personally liable on contracts made on behalf of his principal.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur 2d, Agency § 298.
   Liability on the contract of one who without authority assumes to contract for another. 42 ALR 1310, 60 ALR 1348, 64 ALR 1195.
[2] 3 Am Jur 2d, Agency § 294.
[3] 53 Am Jur, Trial § 349.
[4] 53 Am Jur, Trial §§ 349, 350.
[5, 6] 30A Am Jur, Judgments § 300.

3. TRIAL—MOTION FOR DIRECTED VERDICT—SUFFICIENCY OF EVIDENCE.
The evidence must be construed as strongly as possible in favor of plaintiffs when considering a motion for a directed verdict for defendant, and a directed verdict may be entered only when the court can say, as a matter of law, giving to plaintiffs' proofs the strongest probative force to which they are entitled, that the evidence was not sufficient to justify submitting to the jury the question of defendant's liability to plaintiffs.

4. PRINCIPAL AND AGENT—SCOPE OF AUTHORITY—DIRECTED VERDICT —SUFFICIENCY OF EVIDENCE—LIABILITY OF AGENT.
Claim that the trial court erred in failing to grant defendant son's motion for directed verdict at the close of plaintiffs' proofs *held*, without merit, where plaintiffs' complaint sought recovery from defendant on the theory that he was liable on a contract made by him with plaintiffs as agent for his mother, which contract exceeded the scope of such agency, and plaintiffs' proofs included evidence from which it could reasonably be inferred that defendant did exceed the scope of such agency and that he was fully aware of that fact.

5. APPEAL AND ERROR—JUDGMENT NOTWITHSTANDING VERDICT—EVIDENCE.
Claim by defendant that the correctness of the trial court's ruling on defendant's motion for judgment notwithstanding the verdict must be determined as of the time the plaintiffs rested their case *held*, without merit, for in deciding such a motion, it is not only proper but mandatory that all of the proofs be examined.

6. PRINCIPAL AND AGENT—JUDGMENT NOTWITHSTANDING VERDICT—EVIDENCE.
Claim that the trial court committed error in failing to grant defendant's motion for judgment notwithstanding the verdict, *held*, without merit, where defendant was found personally liable on the contract made beyond the scope of his authority as agent, and defendant's proofs admittedly contained affirmative evidence that he knowingly exceeded the scope of his authority, since it is mandatory that all of the proofs be examined in deciding a motion for judgment notwithstanding the verdict.

Appeal from Branch; Andrews (Mark S.), J. Submitted Division 3 December 6, 1966, at Grand Rapids. (Docket No. 1,433.) Decided May 23, 1967.

Complaint by Ralph Brusslan and R. C. Brusslan and Company, a partnership, against Alta Larsen and Max Larsen to recover sums due plaintiffs on an oral contract with defendants. Verdict and judgment of no cause of action for defendant Alta Larsen. Verdict and judgment for plaintiffs against Max Larsen. Motion by Max Larsen for judgment notwithstanding the verdict denied. Defendant Max Larsen appeals. Affirmed.

*Dresser & Dresser* (*Raymond H. Dresser, Jr.,* and *William P. Marks,* of counsel), for plaintiffs.

*Louisell & Barris,* for defendants.

HOLBROOK, J. This suit was brought by plaintiffs in the circuit court for the county of Branch to recover $6,750 as damages for the breach by defendants of an oral contract. The facts are as follows:

Ralph Brusslan, plaintiff, a resident of Chicago, Illinois, had been engaged in the insurance business as an agent and broker for 41 years. In July, 1963, the defendant, Max Larsen, through a mutual friend, Richard Louis, sought Mr. Brusslan's advice and help on an accidental death policy issued by the Bankers Life & Casualty Company. The policy, in the amount of $250,000, was on the life of Chris A. Larsen, deceased, the father of Max Larsen, and was payable to Mrs. Alta Larsen, the mother of Max Larsen. At the time of the first meeting between Ralph Brusslan and Max Larsen, it was uncertain whether the insurer would pay the claim of Mrs. Larsen, and subsequently, on August 9, 1963, the claim was denied for the asserted reason that Chris Larsen's death was not accidental.

On August 14, 1963, Mr. Brusslan and Max Larsen met with William J. Heckler, the insurer's claims manager in charge of accidental death claims. Although Mr. Heckler said at that time that the company would not pay on the policy, he did agree to attend another meeting where he would consider any additional information which might tend to show that Chris Larsen's death was wholly or partially due to accidental causes. This subsequent meeting was made conditional upon receipt by the insurer of a letter of authorization from Mrs. Alta Larsen, permitting Ralph Brusslan and Max Larsen to represent her interests. In a letter dated August 15, 1963, Mrs. Larsen granted the requested authorization, stating in part: "As per your suggestion, I authorize Mr. Ralph Brusslan and my son, Mr. Max Larsen, to act in my behalf, in regards to setting up a meeting in Coldwater, Michigan, relative to the claim on my deceased husband, Chris A. Larsen, with Bankers Life."

After negotiations at the above meeting authorized by Mrs. Larsen, the parties had reached the point where the insurer was willing to pay $50,000, and the Larsens were holding out for $75,000. According to the testimony of Ralph Brusslan, it was prior to this point in the negotiations that he informed Max Larsen that his fee could run as high as 20% of the total recovery. Mr. Brusslan testified further that Max Larsen stated that he expected to pay and that Mr. Brusslan should not worry about his fee. Max Larsen denied this statement and testified that there never was an agreement on fees for Ralph Brusslan. The final agreement on the amount of the fee, according to the testimony of Ralph Brusslan, was reached on September 19, 1963, two days before the final settlement on the policy was reached. Ralph Brusslan and his son, William, both testified that Max Larsen orally agreed to pay 10%

of the total recovery and, in order to show his financial standing, exhibited an income statement to both witnesses. It was also on September 19, 1963, that Max Larsen is alleged to have reaffirmed previous statements that he had received a power of attorney to act for his mother, Mrs. Alta Larsen, with regard to the insurance claim by opening a drawer in his desk and indicating that the power of attorney was in the drawer. Max Larsen denied having a power of attorney and stated that he did not hand a financial statement to either Ralph or William Brusslan.

On September 21, 1963, the parties reached a settlement of $67,500. Mrs. Larsen was not present when this figure was agreed upon, and Max Larsen stated that he could not accept the settlement because the final assent had to be given by his mother. On September 24, 1963, Mrs. Larsen accepted the insurer's draft in the above amount and executed a release in settlement of the claim.

After the above settlement was reached, the plaintiffs attempted to collect $6,750 for services rendered, but payment was refused, it being the defendants' position that the money was not owed as there was no agreement to pay any sum to the Brusslans and that any services which might have been rendered were done gratuitously. Consequently, plaintiffs instituted this action.

In their pleadings, plaintiffs proceeded on an agency theory, with Mrs. Larsen as the principal and her son, Max Larsen, as the agent. Their theory was that if Max Larsen was acting within his authority as agent for his mother in settlement of her claim, then Mrs. Larsen was liable. Alternatively, if Max Larsen exceeded his authority, then he was liable.

At the conclusion of plaintiffs' proofs, defense counsel made a motion for a directed verdict of no

liability as to Max Larsen on the ground that plaintiffs failed to show that Max Larsen was acting outside the scope of his authority. The trial court denied the motion, stating that the question of authority was one of fact and therefore a jury question.

During the presentation of defendants' proofs, Mrs. Alta Larsen testified that she knew nothing of a 10% fee agreement until she received a bill after the settlement had been consummated. Further, she denied giving her son a power of attorney, and also claimed that the only authority conferred upon Max Larsen by her was to set up the meeting with Bankers Life, which was referred to in her letter of August 15, 1963.

The case was submitted to the jury on the following two special questions. (1) Did Max Larsen engage Ralph Brusslan to negotiate, compromise and settle the claim of Alta Larsen against Bankers Life & Casualty Company for a fee of 10% of the amount obtained through his efforts? The jury answered "Yes." (2) If the answer to question 1 is "Yes," did Max Larsen have authority from Alta Larsen to engage Ralph Brusslan to negotiate, compromise and settle the claim of Alta Larsen against Bankers Life & Casualty Company for a fee of 10% of the amount obtained through his efforts? The jury answered "No."

Judgment for plaintiffs and against defendant Max Larsen for $6,750 was entered upon the verdict of the jury. Counsel for Max Larsen then made a motion for a judgment *non obstante veredicto,* urging that plaintiffs had failed to show in their proofs that Max Larsen had exceeded his authority from his principal so as to render him personally liable on the agreement to pay 10% of the recovery. This motion was denied and Max Larsen has appealed raising the following 2 questions for review:

1. Did the lower court err by denying defendant Max Larsen's motion for a directed verdict brought at the close of plaintiffs' proofs on the theory that plaintiffs had not shown that he, Max Larsen, was acting outside the scope of his authority when he made a fee contract with plaintiffs?

2. Did the trial court commit reversible error by denying defendant Max Larsen's motion for judgment *non obstante veredicto?*

Neither party disputes the well-established principle of the law of agency that an agent acting outside the scope of authority conferred upon him by his disclosed principal renders himself personally liable on any contracts made on behalf of his principal. *Newberry* v. *Slafter* (1894), 98 Mich 468. The corollary of this rule is that where the agent acts within the bounds of authority conferred by a disclosed principal, he does not thereby render himself personally liable on contracts made on behalf of his principal. *Hall* v. *Encyclopaedia Britannica, Inc.* (1949), 325 Mich 35.

In order to submit the question of liability of the defendant Max Larsen to the jury, it was necessary for plaintiffs to present legal evidence that he was acting outside the scope of authority granted by his principal, Mrs. Alta Larsen. It is the argument of defendant Max Larsen that the motion for a directed verdict should have been granted because plaintiffs failed to offer such evidence in the presentation of their case.

The obligation of this Court on review of a denial of a motion for directed verdict is stated in the case of *Anderson* v. *Gene Deming Motor Sales, Inc.* (1963), 371 Mich. 223, 229, 230 as follows:

"In *Cabana* v. *City of Hart* (1950), 327 Mich 287 (19 ALR2d 333), this Court said (p 305):

" 'In considering the question whether defendant was entitled to a directed verdict, the testimony must be construed as strongly as possible in favor of the plaintiff. (Citing cases.) The specific inquiry is whether this Court can say, as a matter of law, giving to plaintiff's proofs the strongest probative force to which they are entitled, that the evidence was not sufficient to justify submitting to the jury the questions of defendant's negligence and its knowledge or notice of the situation.' "

An examination of the record reveals the following with regard to plaintiffs' proofs. There was substantial testimony by plaintiffs indicating that Max Larsen urged Ralph Brusslan several times to continue negotiations. However, the only concrete evidence revealing the relationship between Max and Alta Larsen was the letter written by Alta Larsen on August 15, 1963, which only granted authority to set up the one meeting, which was held. The alleged words and acts of Max Larsen asserting full authority to act on behalf of his mother were inconsistent with the only direct evidence of a limited grant of authority by Alta Larsen, and this presented a fact situation for resolution by the jury.

Plaintiffs introduced testimony regarding the fee agreement, which was allegedly settled at 10%. Yet, plaintiffs also testified that Max Larsen exhibited a financial statement of his own net worth in order to repress plaintiffs' fears of not being paid. Looking at the evidence in the light most favorable to plaintiffs, *Anderson* v. *Gene Deming Motor Sales, Inc., supra,* there is a reasonable inference that Max Larsen knew that he had gone beyond his authority and consequently intended to pay the fee out of his own pocket. This inference is reinforced by plaintiffs' evidence to the effect that Max Larsen requested that he, rather than his mother, should be billed by plaintiffs. Also, after the settlement, Mr.

Louis testified as to what occurred at a meeting attended by Max Larsen, Ralph Brusslan, and himself, as follows:

"*Q.* Now, was there any discussion that you overheard with Ralph Brusslan and Max Larsen at the meeting at your house or in the meeting that you had with Max Larsen after that concerning fees and an agreement to pay fees?

"*A.* Well, at my home Mr. Brusslan did say to Mr. Larsen, 'You did agree to pay 10% of what I collect when my son and I were at your office.'

"I wasn't at that meeting. And, Max said, 'Yes, but, I thought you were only kidding, that you were doing it for me as a favor.'"

Other factors in plaintiffs' proofs which, considered in the light most favorable to plaintiffs, would indicate that Max Larsen was acting beyond the scope of his authority were the words and actions of Max Larsen at the time the settlement figure of $67,500 was reached. In spite of his representations of complete authority from his mother, Max Larsen would not finally accept the settlement because that question was his mother's decision. This is clearly inconsistent with his representations of complete authority.

From the foregoing brief review of the evidence, it is apparent that the trial judge was correct in denying the motion for a directed verdict. It cannot be said as a matter of law that the evidence was not sufficient to justify submitting to the jury the issue of Max Larsen's authority. *Cabana* v. *City of Hart, supra.*

The second question deals with the denial by the trial judge of defendant Max Larsen's motion for judgment *non obstante veredicto.* There is no need to review the evidence presented by defendants since it is admitted in the brief for defendant Max Larsen

that the evidence tends to establish that he exceeded his authority when he entered into the 10% fee contract with Ralph Brusslan.   Defendant contends, however, that the correctness of the trial court's ruling must be determined as of the time plaintiffs rested their case.

Of the numerous cases cited by appellant in favor of his position, the most recent is *Kasza* v. *City of Detroit* (1963), 370 Mich 7.   In *Kasza, supra,* the plaintiff appealed from entry of a judgment *non obstante veredicto* in favor of defendant.   Mr. Justice DETHMERS stated on pp 10, 11:

"A controlling question in the case, then, is whether, on review here, we judge the correctness of the trial court's entry of judgment *non obstante veredicto* on the most favorable view of the evidence at the conclusion of plaintiff's proof or of the evidence as the record stood when all the proofs were in both for plaintiff and defendant.   *   *   *

"In this case the court reserved judgment on defendant's motion for directed verdict at the end of plaintiff's proofs.   Under the above language this amounted to a denial of defendant's motion.   *   *   * The case is here only on plaintiff's appeal from the trial court's grant of defendant's motion for judgment *non obstante veredicto* made after all the proofs were in and the jury had rendered a verdict for plaintiff.   *Under such circumstances we review the judgment non obstante veredicto by taking the view most favorable to plaintiff of all the proofs in the case.*"   (Emphasis supplied.)

Also, see *Mitcham* v. *City of Detroit* (1959), 355 Mich 182, pp 196–200.

In the more recent case of *Kawbawgam Hotel Co.* v. *Michigan Gas & Electric Co.* (1964), 372 Mich 507, 512, we find this short statement: "On review of a judgment notwithstanding verdict, we view *all*

proofs in the light most favorable to plaintiff," citing *Kasza, supra.*

Therefore, it is not only proper, but also mandatory, that *all* of the proofs should be examined when deciding a motion for judgment *non obstante veredicto.*

We conclude the trial judge was correct in his ruling denying appellant's motion for judgment notwithstanding the verdict of the jury.

Affirmed. Costs to appellees.

QUINN, P. J., and FITZGERALD, J., concurred.