## JACKSON v GOODMAN

OPINION OF THE COURT

1. REWARDS—PRINCIPAL AND AGENT—REWARD OFFERS—AUTHORITY
   TO CONTRACT.

   Any individual with the authority to make a contract may offer a
   reward and be bound by that offer.

2. PRINCIPAL AND AGENT—AUTHORITY TO CONTRACT—AUTHORITY TO
   MANAGE A BUSINESS—INCIDENTAL AUTHORITY.

   The authority to contract may be inferred from the authority to
   manage a business; however, such authority is limited to mak-
   ing contracts which are incidental to such business, are usually
   made in such business, or are reasonably necessary in conduct-
   ing such business.

3. REWARDS—PRINCIPAL AND AGENT—AUTHORITY—FACTORS—CUS-
   TOM OF SIMILAR BUSINESSES—UNUSUAL TRANSACTIONS—REWARD
   OFFERS—REASONABLE BELIEF.

   One of the factors to be considered in determining the extent of
   the authority of an agent is the custom of similar businesses at
   the same time and place; however, where the transaction is one
   unusual to the specific business affected, as in the offer of a
   reward, the emphasis must differ and significant emphasis must
   be placed on the course of business conduct in the community
   at large concerning rewards and on whether the recipient party
   reasonably believed that the agent was authorized to act and
   has no notice that the agent was not as authorized.

4. PRINCIPAL AND AGENT—DISPUTED QUESTION OF AGENCY—JURY
   QUESTION.

   A disputed question of agency, if there is any testimony, either

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 74 Am Jur 2d, Suretyship § 109.
[3, 8, 9] 3 Am Jur 2d, Agency §§ 69–72.
[4] 3 Am Jur 2d, Agency §§ 359, 360.
[5] 67 Am Jur 2d, Rewards §§ 10, 15.
[6] 4 Am Jur 2d, Appeal and Error § 10.
[7] 46 Am Jur 2d, Judgments § 118.
[10] 74 Am Jur 2d, Suretyship § 29.

direct or inferential, tending to establish it, becomes a question of fact for the jury to determine.

5. Rewards—Principal and Agent—Judgment—Judgment Notwithstanding the Verdict—Sufficient Evidence—Jury Question—Existence of Rewards—Inherent Authority—Authority by Ratification.

A trial court improperly granted a judgment notwithstanding the verdict in a case to collect a reward where there was sufficient evidence to present jury questions concerning the existence of a reward offer and the presence of either inherent authority or authority by ratification in the person offering the reward on behalf of the defendants.

6. Appeal and Error—Circuit Court—District Court—Nonjurisdictional Defects—Waiver.

Nonjurisdictional defects of an appeal filed in a circuit court from a district court may be modified or waived by the circuit court in its discretion; but where such defects are found, the circuit court should not consider the merits of the case; however, a ruling on the merits where there are such defects, will be deemed a waiver of any nonjurisdictional defects (GCR 1963, 705.5[a]).

Dissent by McGregor, J.

7. Judgment—Judgment Notwithstanding the Verdict—Standard of Review—Motions.

*A court reviewing a motion for a judgment notwithstanding the verdict must view all the evidence and testimony adduced at the trial in the light most favorable to the person against whom the motion was made, and if, when so viewed, there is any evidence which was competent and sufficient to support the jury's determination, that determination should not be disturbed.*

8. Principal and Agent—Principal's Liability—Actual Authority—Apparent Authority—Inherent Authority—Authority by Ratification.

*A principal is subject to liability for the acts of an agent if it can be said that: (a) the agent was authorized to do the act, (b) the agent was apparently authorized to do the act, (c) the act was within the agent's inherent authority, or (d) the act was ratified by the principal.*

9. REWARDS—PRINCIPAL AND AGENT—GENERAL MANAGER—APPAR-
ENT AUTHORITY—INHERENT AUTHORITY—BUSINESS CUSTOMS—
BINDING CONTRACTS—REWARD OFFERS.

*A general manager can only have the apparent or inherent
authority to do those things which managers in that business
at that time and place customarily do, and, as such, contracts
entered into by general managers are only binding on the
principal if they are incidental to a business such as the
principal's, are usually made in such a business, or are reason-
ably necessary in conducting such a business; therefore it was
unreasonable for a third person to assume that a hotel general
manager had the authority to offer a reward for information
leading to the arrest and conviction of the person responsible
for the murder of a hotel employee where there was no actual
authority.*

10. REWARDS—PRINCIPAL AND AGENT—RATIFICATION—AFFIRMANCE OF
PRIOR ACT—FAILURE TO REPUDIATE—ACTUAL KNOWLEDGE—RE-
WARD OFFERS.

*Ratification is the affirmance by a person of a prior act which did
not bind him, but which was done or professedly done on his
account, whereby the act, as to some or all persons, is given
effect as if originally authorized by him, and in some instances,
an affirmance of an unauthorized act can be inferred from the
failure of the principal to repudiate it; however, a plaintiff
cannot claim ratification of a reward offer where there is no
evidence presented to show that the alleged principal had
actual knowledge of the reward offer.*

Appeal from Oakland, Arthur E. Moore, J. Sub-
mitted March 4, 1976, at Detroit. (Docket No.
23669.) Decided May 27, 1976.

Complaint, in district court, by Robert W. Jack-
son against Albert J. Goodman, Sam H. Goodman,
and Hyman Goodman, formerly doing business as
St. Regis Hotel Company, to collect a reward
offered by the defendants' agent. The jury re-
turned a verdict in favor of the plaintiff. The trial
court entered a judgment notwithstanding the
verdict and dismissed the suit against the defend-

ants. The circuit court affirmed. Plaintiff appeals by leave granted. Reversed and remanded.

*Craig, Farber & Downs, P. C.,* for plaintiff.

*Bornstein & Wishnow,* for defendant.

Before: D. E. HOLBROOK, Jr., P. J., and MC-GREGOR and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. The facts are as stated by the dissent. We find that the trial court improperly granted a judgment notwithstanding the verdict because there was sufficient evidence to present jury questions concerning the existence of a reward[1] and the presence of either inherent authority or ratification.

The law governing rewards and the rules defining implied authority are straightforward. It is difficult, however, to apply the precedent governing both areas to the same, unique set of facts. In general, any individual with the authority to make a contract may offer a reward and be bound by that offer. 67 Am Jur 2d, Rewards, § 7, p 6. The authority to contract may be inferred from the authority to manage a business. Such authority is limited to making "contracts which are incidental to such business, are usually made in it, or are reasonably necessary in conducting it". 1 Restatement of the Law, Agency 2d, § 73(a), p 183. One of the factors to be considered in determining the extent of authority is the custom of similar businesses at the same time and place. See 1 Restatement of the Law, Agency 2d, § 34(b), p 118. See also *Leo Austrian & Co v Springer,* 94 Mich 343;

---

[1] We concur in the dissent's reasoning and holding regarding the existence of a reward offer.

54 NW 50 (1892), *Kopprasch v New York Indemnity Co,* 250 Mich 491; 230 NW 909 (1930).

Other courts have presumed authority in the president of a bank to offer, on behalf of the bank, a reward for information leading to the arrest of a defaulting teller, *The Bank of Minneapolis v Griffin,* 168 Ill 314; 48 NE 154 (1897). Similarly the authority to offer a reward for the arrest of persons maliciously destroying railroad tracks has been held to be within the implied authority of the railroad superintendent. *Central Railroad and Banking Co v Cheatham,* 85 Ala 292; 4 So 828 (1888).

The conflict resulting from an application of agency principles to the instant case is well illustrated by the divergence between our view and that of the dissent. The basic area of disagreement involves a question of perspective. The dissent views the question of implied authority from the perspective of the business. We view this question from the perspective of the plaintiff, especially that concerning the reasonableness of his reliance on the newspaper article.

Normally, the application of rules concerning usual course of business results in an equitable outcome in line with the parties' expectations, advancement of commercial intercourse and considerations of fundamental fairness. Where the specific business exhibits a general course of behavior relative to the questioned acts, the inquiry generally will give greater focus to the specific concern than to the course of conduct in similar businesses. Where, as here, the transaction is one unusual to the specific business affected, the emphasis must differ. In such a case, significant emphasis must be placed on the course of business conduct in the community at large concerning

rewards and on whether the recipient party "reasonably believes that the agent is authorized to [act] * * * and has no notice that he is not so authorized". 1 Restatement of the Law, Agency 2d, § 161, p 378. A jury, as the repository of "community sense", is in a unique position to decide questions of usual course of conduct and reasonable reliance in such unusual cases.

It has long been the policy of this jurisdiction that:

"[w]hen there is a disputed question of agency, if there is any testimony, either direct or inferential, tending to establish it, it becomes a question of fact for the jury to determine." *Miskiewicz v Smolenski,* 249 Mich 63, 70; 227 NW 789 (1929).

See also *Kwasny v Driessen,* 42 Mich App 442; 202 NW2d 443 (1972). We, therefore, find that the question of implied agency liability was properly submitted to the jury and that the jury verdict should not have been disturbed.

We also find that there was sufficient evidence of ratification by inaction to present a jury question. The jury could have reasonably disbelieved the testimony of Albert Goodman, who claimed that he read the *Detroit News* but that he did not know of the reward. The jury could have reasonably held that the owner of a business would be especially attracted to news about that business in a paper which he read.

For the above reasons, we reverse the trial court and circuit court and remand this cause to the trial court for entry of judgment in conformance with the jury verdict. Costs to plaintiff.[2]

---

[2] In addition to upholding the district court verdict on its merits, the circuit court held that "the appeal was not timely filed, transcript adequately and timely provided, bond filed or briefs filed as required".

D. E. HOLBROOK, JR., P. J., concurred.

McGREGOR, J. *(dissenting).* On December 27, 1966, a night clerk at the St. Regis Hotel was killed during a robbery. On December 30, in a newspaper article about the investigation, the *Detroit News* printed the information that the St. Regis management had posted a $1,000 reward for any information leading to the arrest and conviction of the killer. On January 1, 1967, plaintiff Jackson proceeded to the Detroit Police Department and informed them that David Gauthier had killed the night clerk. The plaintiff then testified against Gauthier at both the preliminary examination and at the trial, and Gauthier was subsequently convicted of first-degree murder. Plaintiff then attempted to recover the reward. The owners of the hotel, the defendants, declined to pay the reward and this suit ensued.

In a district court trial, held in January, 1974, the jury returned a verdict in favor of the plaintiff and awarded him $1,000. However, the trial court entered a judgment notwithstanding the verdict and dismissed the suit against the defendants. The circuit court affirmed, and plaintiff appeals to this court and is here by leave granted.

At trial, certain facts were uncontroverted. The defendants acknowledged that the plaintiff's actions had led to the arrest and conviction of the killer. Also, the defendants conceded that the plaintiff would not have acted as he did in the

Our review of the record discloses that plaintiff did timely file his appeal to circuit court. Of the matters found faulty by the circuit court, timely filing is the sole jurisdictional requirement. GCR 1963, 705.5(a). Other defects may be modified or waived by the court in its discretion. GCR 1963, 705.15. Having found the above, the circuit court should not have considered the merits of the case. We, therefore, have deemed the ruling on the merits a waiver of any nonjurisdictional defects.

betrayal of Gauthier but for the notice of the reward in the *Detroit News.* Rather, the dispute at trial was whether the reward was actually offered, and, if such a reward was in fact offered, whether the person who made the offer had the authority to do so. It was the plaintiff's theory that the reward was offered by Frank C. Bromber, a manager of the hotel, and that the offering of the reward was within Bromber's authority. The district court, in granting the judgment notwithstanding the verdict, found that the plaintiff failed to present sufficient evidence in support of his theory to justify the jury's verdict. Plaintiff, on appeal, disputes this finding.

At the outset, we note the standard of review to be applied to a case such as the present one:

"In Michigan a court reviewing a motion for a judgment notwithstanding the verdict must view all the evidence and testimony adduced at the trial in the light most favorable to the person against whom the motion was made. *Savage v Peterson Distributing Co, Inc,* 379 Mich 197 [150 NW2d 804] (1967), *Prentkiewicz v Karp,* 375 Mich 367 [134 NW2d 717] (1965), *Kroll v Katz,* 374 Mich 364 [132 NW2d 27] (1965), *Wamser v N J Westra & Sons, Inc,* 9 Mich App 89 [155 NW2d 871] (1967), *Brusslan v Larsen,* 6 Mich App 680 [150 NW2d 525] (1967), *Johnson v Chesapeake & O R Co,* 6 Mich App 611 [150 NW2d 178] (1967). If, when so viewed, there is *any evidence which was competent and sufficient to support the jury's determination,* said determination should not be disturbed. See *Wamser, supra; Killen v Benton,* 1 Mich App 294 [136 NW2d 29] (1965)." (Emphasis added.) *Taft v J L Hudson Co,* 37 Mich App 692, 698; 195 NW2d 296 (1972).

Thus, it must be determined whether there was any evidence presented at trial which would support plaintiff's theory and thereby justify the jury's verdict.

Addressing ourselves first to the issue of whether a reward was in fact offered, we find that there was sufficient evidence presented which would justify a jury in concluding that Bromber did make such an offer.

William J. Hathaway, an assistant prosecuting attorney, testified in part as follows:

*"Q. [by defense counsel] Did Mr. Bromber ever tell you that he specifically was offering a reward on behalf of the Hotel?*

*"A. I would have to answer that question, yes.* But, I don't remember the words, or anything, because I had lots of conversations with Mr. Bromber of a passing nature when I would be in the Hotel; and, it's possible that he even said something to me down in the Prosecutor's Office—you know—about the reward, or over the telephone. * * *

*"Q. How is it that you specifically came in contact with him?*

*"A. With Bromber?*

*"Q. Yes.*

*"A. We met at the Hotel concerning the reward.*

*"Q. How did you have contact with him?*

*"A. The only thing I know is that he mentioned it to me.*

*"Q. He just mentioned the reward to you?*

*"A. As I remember it; the more I think about it, because I don't have any notes. The more I think about it is that I remember discussing the case when he would come down to the Police Headquarters at the Prosecutor's Office. In those days, the Wayne County Prosecutor's Office was on the fifth floor of Police Headquarters."* (Emphasis added.)

Although Hathaway's entire answer was somewhat vague and contradictory, he nevertheless did state that Bromber told him that he was offering a reward on behalf of the hotel. Consequently, there was some evidence that Bromber offered the re-

ward and, therefore, the trial court should not have entered the judgment n.o.v., on that basis.

The issue of whether there was any evidence concerning Bromber's authority to offer the reward is more complex. The resolution of this issue largely involves the law of agency and the application of its principles to the facts of the present case. A principal is subject to liability for the acts of an agent if it can be said that: (a) the agent was authorized to do the act; (b) the agent was apparently authorized to do the act; (c) the act was within the agent's inherent authority; or (d) the act was ratified by the principal.

In the present case, Bromber cannot be said to have been authorized to offer the reward. At trial, defendant Albert Goodman testified that Bromber could not expend more than $50.00 without Goodman's express approval and that such approval was not given here. This testimony was uncontroverted by the plaintiff and, therefore, it must be assumed that Bromber did not have the actual authority to offer a reward of $1,000.00.

Nor do I find any evidence presented at trial which would justify the jury in concluding that Bromber had either the apparent[1] or inherent[2] authority to offer the reward. Viewing the evidence in the light most favorable to the plaintiff, the only evidence adduced at trial which bore on the apparent or inherent authority of Bromber was testimony that he was the general manager of the hotel. Regardless of whether this testimony is analyzed in terms of apparent[3] or inherent[4] au-

---

[1] 1 Restatement, Agency (2d), § 8, p 30.

[2] 1 Restatement, Agency (2d), § 8A, p 36.

[3] 1 Restatement, Agency (2d), § 27, Comment d, pp 105–106.

[4] *See* 1 Restatement, Agency (2d), § 161, Comments b, d and g, pp 380–382.

thority, the primary issue remains the same: Can
third persons reasonably assume that a general
manager of a hotel has the authority to offer a
reward for information leading to the arrest and
conviction of the person responsible for the mur-
der of a hotel employee? I would hold that third
persons cannot reasonably make such an assump-
tion.

A general manager can only have the apparent
or inherent authority to do those things which
managers in that business at that time and place
customarily do.[5] As such, contracts entered into by
general managers are only binding on the princi-
pal if they are incidental to a business such as the
principal's, are usually made in such a business, or
are reasonably necessary in conducting such a
business.[6] I do not think that it can reasonably be
said that the reward in the present case is either
incidental to or reasonably necessary in conduct-
ing the hotel business. Nor do I think, in the
absence of any evidence to the contrary, that it
can be assumed that such rewards are usually
made in the hotel business. Rather, it would be
more reasonable to assume that the offering of a
reward is an unusual or extraordinary event
which is not customary in most businesses. Thus,
since the plaintiff has failed to show that general
managers of hotels, or of defendants' hotel in
particular, usually offer rewards under circum-
stances similar to those in the present case, I
conclude that there was no evidence presented
which showed that Bromber had the apparent or

[5] *See Kopprasch v New York Indemnity Co,* 250 Mich 491; 230 NW
909 (1930), *Bay State Milling Co v Saginaw Baking Co,* 225 Mich 557;
196 NW 204 (1923).

[6] 1 Restatement, Agency (2d), § 73(a), p 189. *See also Beecher v
Venn,* 35 Mich 465 (1877) (Hotel manager), *Van Stee v Ransford,* 346
Mich 116; 77 NW2d 346 (1956), *Cutler v Grinnell Brothers,* 325 Mich
370; 38 NW2d 893 (1949).

inherent authority to offer the reward in the instant case.

This leaves ratification as the only remaining basis by which the defendants could be bound in the present case. Ratification is the affirmance by a person of a prior act which did not bind him, but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.[7] Further, in some instances, an affirmance of an unauthorized transaction can be inferred from the failure of the principal to repudiate it.[8] However, plaintiff cannot claim ratification in the present case since he failed to show any actual knowledge of the reward on the part of the defendants.[9] The only evidence favorable to the plaintiff which bore on this issue was defendant Albert Goodman's admission that he subscribed to and regularly read the *Detroit News.* I would hold that this evidence, standing alone, is insufficient to justify a jury determination of actual knowledge. The inference supplied by such evidence is simply too weak to provide an adequate basis for this determination. To hold otherwise, I believe, would place a totally unrealistic and unreasonable burden upon persons subscribing to newspapers.

Having found that plaintiff's evidence did not provide a legal basis for subjecting the defendants to liability, I would affirm the circuit court, and not reach the other issues raised.

---

[7] 1 Restatement, Agency (2d), § 82, p 210. *See Cudahy Brothers Co v West Michigan Dock & Market Corp,* 285 Mich 18; 280 NW 93 (1938).

[8] *See* 1 Restatement, Agency (2d), § 94, p 244.

[9] *See Moore v Mitchell,* 278 Mich 10; 270 NW 197 (1936), *Pittsburgh & Ohio Mining Co v Scully,* 145 Mich 229; 108 NW 503 (1906), *Cowan v Sargent Manufacturing Co,* 141 Mich 87; 104 NW 377 (1905), *Thiel Detective Service Co v Seavey,* 145 Mich 674; 108 NW 1080 (1906).