*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DARLENE WEBB and JOHN WEBB,

      Plaintiffs-Appellants,

v

HILLSDALE HOSPITAL, also known as
HILLSDALE COMMUNITY HEALTH CENTER,

      Defendant-Appellee,

and

HILLSDALE OBSTETRICS & GYNECOLOGY,
PC and ALFRED K. BEDIAKO, M.D.,

      Defendants.

UNPUBLISHED
November 19, 2024
3:08 PM

No. 364728
Hillsdale Circuit Court
LC No. 2021-000287-NI

Before: RIORDAN, P.J., and YOUNG and WALLACE, JJ.

PER CURIAM.

In this action alleging medical negligence, vicarious liability, and loss of consortium, plaintiffs, Darlene and John Webb, appeal as on leave granted,[1] the stipulated order dismissing plaintiffs' claims with prejudice. Plaintiffs challenge the circuit court order granting summary disposition to defendant, Hillsdale Hospital ("the hospital"), under MCR 2.116(C)(10) (no genuine dispute of material fact). On appeal, plaintiffs contend there remained a question of fact as to whether codefendant, Dr. Alfred K. Bediako, M.D., was an ostensible agent of the hospital, rendering the hospital vicariously liable for Dr. Bediako's alleged medical negligence. Because an issue of fact remains regarding whether Dr. Bediako was an ostensible agent of the hospital, we reverse the circuit court's order and remand this case for further proceedings.

---

[1] *Darlene Webb v Hillsdale Hosp*, unpublished order of the Court of Appeals, entered October 5, 2023 (Docket No. 364728).

## I. FACTUAL BACKGROUND

This appeal arises from Dr. Bediako's treatment of Darlene Webb for removal of an ovarian mass. Dr. Bediako is a licensed obstetrician and gynecologist in Michigan, and owns defendant Hillsdale Obstetrics and Gynecology, P.C., an obstetrics and gynecology clinic located about half a mile from the hospital.

### A. DR. BEDIAKO'S RELATIONSHIP WITH THE HOSPITAL

Dr. Bediako had staff privileges at the hospital since 1992, and it was the only hospital where he performed procedures. At the time of Darlene's surgery, he was the only gynecologist at the hospital – the hospital's Department of Obstetrics and Gynecology consisted of him and whatever other midlevel providers were available to treat patients, such as nurses. While treating patients both at the hospital and in his clinic, Dr. Bediako wore scrubs that said his name and "OB Department" on them. In the hospital, he also wore a medical badge for identification purposes that said "Hillsdale Hospital" on it. When questioned about the issue of his employment status, Dr. Bediako insisted his patients knew he was in private practice but admitted he never told them he was.

### B. DR. BEDIAKO'S TREATMENT OF DARLENE

Darlene first met Dr. Bediako in 2007. An ultrasound done on October 1, 2007 revealed Darlene had a left ovarian mass. After a consult with Dr. Bediako on October 5, 2007 at his clinic, no treatment was recommended, and Dr. Bediako said the mass would go away. Darlene did not return to see Dr. Bediako, or any gynecologist, between 2007 and 2019. In 2019, Darlene began experiencing urine incontinence and pain in the lower left quadrant of her abdomen. She was referred by her primary care physician to a physician's assistant, Betty DeLong, PA, who specializes in urology. Ms. DeLong ordered an ultrasound to be performed at the hospital on September 13, 2019. The ultrasound revealed a left ovarian mass and an adjacent left ovarian cyst. After discussing the results, Dr. DeLong referred Darlene to Dr. Bediako because the mass was around the ovary and needed to be treated by a gynecologist.

Darlene went to see Dr. Bediako at his clinic two more times before surgery was scheduled. On November 22, 2019, Darlene signed a multiple-page consent form for a laparotomy to remove the ovarian mass – it is unclear from the record where the consent form was signed. The top of the consent form had the hospital's logo on it, and was labeled "Informed Consent for Surgery or Other Procedure." The first paragraph of the first page of the consent form stated "Your doctors are not employees or agents of the hospital. They are independent contractors." Paragraph five on the first page also stated "I herby [sic] authorize Hillsdale [Hospital] to provide its appropriate hospital services and care necessary in conjunction with the procedure(s) above described." Darlene does not recall signing any forms, and testified her memory is "very, very bad . . . ." When asked whether Dr. Bediako's was an employee of the hospital, Darlene testified that she believed he was.

Darlene presented to the hospital on November 27, 2019 for an "exploratory laparotomy with excision of the left ovarian mass," but her condition worsened after surgery because of a

perforation of the small intestine. Darlene remained critically ill after a second laparotomy to repair the bowel perforation, and remained on a colostomy bag until July 27, 2020.

## C. PROCEDURAL POSTURE

On April 19, 2021, plaintiffs filed a complaint against Dr. Bediako and Hillsdale Obstetrics and Gynecology, P.C., and against the hospital. Count I alleged Dr. Bediako breached the standard of care when performing the laparotomy, which caused a bowel perforation that he failed to timely diagnose and treat postoperatively. Plaintiffs alleged that but for Dr. Bediako's negligence, Darlene would not have suffered a bowel perforation, and it would not have advanced to sepsis, requiring intubation, a colostomy bag, additional surgery, and an extended hospital stay and in-patient rehabilitation. Plaintiffs also alleged Dr. Bediako was an employee, agent, servant, or ostensible agent of the hospital and therefore, the hospital was vicariously liable for Dr. Bediako's alleged medical negligence.

The hospital moved for summary disposition under MCR 2.116(C)(8) (legal sufficiency) and MCR 2.116(C)(10) (factual sufficiency), arguing there was no genuine issue of material fact as to anything other than damages. Although the hospital moved for summary disposition under MCR 2.116(C)(8) and (C)(10), the circuit court addressed the motion only under (C)(10). The circuit court concluded that, "[w]e have a signed consent agreement, we have an ongoing relationship with Dr. Bediako, and its [sic] against that backdrop that I find in favor of Hillsdale Hospital. . . ." Plaintiffs now appeal.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to grant or deny summary disposition. *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020). A motion for summary disposition under MCR 2.116(C)(10), which tests the factual sufficiency of the plaintiff's claim, is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree." *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation marks and citation omitted). When reviewing the trial court's decision to grant or deny summary disposition under MCR 2.116(C)(10), this Court considers the parties' documentary evidence in the light most favorable to the nonmoving party. *Johnson*, 502 Mich at 761. "[R]eview is limited to the evidence that had been presented to the circuit court at the time the motion was decided." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009).

## III. ANALYSIS

"A hospital may be 1) directly liable for malpractice, through claims of negligence in supervision of staff physicians as well as selection and retention of medical staff, or 2) vicariously liable for the negligence of its agents." *Cox v Bd of Hosp Managers for the City of Flint*, 467 Mich 1, 11; 651 NW2d 356 (2002). "Generally speaking, a hospital is not vicariously liable for the negligence of a physician who is an independent contractor and merely uses the hospital's facilities to render treatment to his patients." *Grewe v Mt Clemens Gen Hosp*, 404 Mich 240, 250;

273 NW2d 429 (1978). Likewise, a hospital is not liable for the alleged negligence of an independent contractor "merely because the patient looked to the hospital at the time of admission or even was treated briefly by an actual nonnegligent agent of the hospital." *Chapa v St Mary's Hosp of Saginaw*, 192 Mich App 29, 33; 480 NW2d 590 (1991). A hospital is only "vicariously liable for the malpractice of actual or apparent agents." *Id*. In an actual agency relationship, it is the hospital's power or ability to control the agent "that justifies the imposition of vicarious liability." *Laster v Henry Ford Health Sys*, 316 Mich App 726, 736; 892 NW2d 442 (2016). In this case, the parties do not dispute that Dr. Bediako was not an actual agent of the hospital. The parties instead rely on ostensible agency to establish vicarious liability.

We proceed first with the understanding that "[a]gency is always a question of fact for the jury." *Grewe* at 253, quoting *Stanhope v Los Angeles College of Chiropractic*, 54 Cal App2d 141, 146; 128 P2d at 705, 708 (1942). "Where there is a disputed question of agency, any testimony, either direct or inferential, tending to establish agency creates a question of fact for the jury to determine." *Meretta v Peach*, 195 Mich App 695, 697; 491 NW2d 278 (1992), citing, *Jackson v Goodman*, 69 Mich App 225, 230; 244 NW2d 423 (1976).

In establishing an ostensible agency relationship between a physician and a hospital, "the critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems" *Grewe*, 404 Mich at 251. "The reasonableness of the patient's belief in light of the representations and actions of the hospital is the 'key test' embodied in *Grewe*." *Chapa*, 192 Mich App 29, 34; 480 NW2d 590 (1991). Our Supreme Court in *Grewe* adopted the three part test created in *Stanhope* to determine whether a physician is an ostensible agent of the hospital. The following elements must be met: (1) "[t]he person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one"; (2) "such belief must be generated by some act or neglect of the principal sought to be charged"; and (3) "the third person relying on the agent's apparent authority must not be guilty of negligence." *Grewe*, 404 Mich at 253 (citations omitted).

The focus of first element of the *Grewe* test, as noted in *Smith v Saginaw S&L Ass'n*, 94 Mich App 263, 271-272; 233 NW2d 613 (1979),[2] is not on whether the principal has affirmatively identified the wrongdoer as its agent, but whether a third person is reasonable in their belief in the agent's authority based on the principal's actions. One such factor considered in the reasonableness inquiry is "whether the hospital provided the plaintiff with [the physician] or whether the plaintiff and [the physician] had a patient-physician relationship independent of the

---

[2] Although we are required to follow cases decided on or after November 1, 1990, see MCR 7.215(J)(1), a published case decided by this Court "has precedential effect under the rule of stare decisis," MCR 7.215(C)(2). See also *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018), (stating that although this Court is not "strictly required to follow uncontradicted opinions from this Court decided before November 1, 1990," those opinions are nonetheless "considered to be precedent and entitled to significantly greater deference than are unpublished cases") (emphasis omitted).

hospital setting." *Grewe*, 404 Mich at 251. Whether such a relationship exists is based on the totality of the circumstances.

In reviewing the totality of the circumstances, we turn first to the relationship between Dr. Bediako and Darlene. The trial court found there was no issue of material fact as to hospital's ostensible agency over Dr. Bediako because it found Darlene and Dr. Bediako had "an ongoing relationship." "[A]n independent relationship between a doctor and a patient that preceded a patient's admission to a hospital precludes a finding of ostensible agency, unless the acts or omissions of the hospital override the impressions created by the preexisting relationship and create a reasonable belief that the doctor is an agent of the hospital." *Zdrojewski v Murphy*, 254 Mich App 50, 66; 657 NW2d 721 (2002). Put differently, a pre-existing relationship does not, in and of itself, preclude ostensible agency without further inquiry. *Strach v St John Hosp Corp*, 160 Mich App 251, 263; 408 NW2d 441 (1987) ("[W]e express our disapproval of the often-suggested proposition that an independent relationship between the patient and his treating physician requires a finding of no agency relationship as a matter of law. It seems apparent that acts or omissions of a defendant hospital in the particular circumstances of treatment may override the impressions created by a previous relationship and reasonably create a belief that a staff physician is acting on behalf of the hospital.")

Dr. Bediako and Darlene knew each other before the surgery in question. She met him in 2007 regarding her ovarian mass and twice before her 2019 surgery. But that *a* relationship preexisted the surgery is not the legal test. The trial court must consider:

> (1) whether the plaintiff was referred to the physician by the lessor, (2) whether the plaintiff's entire treatment occurred at the lessor's clinic, (3) whether the physician represented himself as a clinic member, (4) whether the plaintiff had reason to believe that the physician was merely an independent contractor, and (5) whether the physician's bill was issued on the clinic's stationery. [*Sasseen v Community Hosp Foundation*, 159 Mich App 231, 239; 406 NW2d 193 (1986).]

In this case, Darlene, over ten years after a single encounter with Dr. Bediako, was referred to Dr. Bediako by a physician's assistant. Her two visits preceding surgery occurred in Dr. Bediako's clinic, but the ultrasound and blood test needed to determine whether to remove the ovarian mass, occurred at the hospital.

Additionally, Dr. Bediako testified he never told his patients he was a gynecologist in private practice. He just assumed they knew. Further, while he was seeing patients in his clinic, he wore scrubs that said "Dr. Bediako, OB Department." Given that Dr. Bediako's private practice was half a mile from the hospital, his scrubs said "OB Department," and his clinic and the hospital shared the name "Hillsdale," it is reasonable to infer that the "department" to which Dr. Bediako belongs is part of the hospital. Darlene's deposition and some additional information from Dr.

Bediako's deposition, taken together, present a question of fact as to whether this is a preexisting relationship contemplated by the law.[3]

We also note that Darlene signed consent forms. Like a prior relationship, a consent form is a critical piece of evidence that can negate a patient's reasonable belief that the physician is an agent of the hospital, but it does not destroy an ostensible agency claim. Cases from this Court have traditionally found a consent form as stronger evidence that an ostensible agency relationship is lacking. See *Tansil v Sherrod*, unpublished per curiam opinion of the Court of Appeals, issued November 26, 2002 (Docket No. 237002) pp 1-2 (holding that a consent form signed by an 86 year old patient admitted for cataract surgery, which clearly stated that the physicians were independent contractors, was sufficient to negate any claim of ostensible agency, even though the patient did not read the form and had no reliable person read it to her, because "[a] party who executes a document is charged with knowledge of its contents. *Dombrowski v Omer*, 199 Mich App 705, 710; 502 NW2d 707 (1993).")[4]; *Wendt v Bowerman*, unpublished per curiam opinion of the Court of Appeals, issued June 11, 2019 (Docket No. 343612), pp 2, 6-7 (holding there could be no ostensible agency relationship where the patient signed a consent form, where she testified she had no recollection of speaking with any anesthesiologist at the defendant hospital prior to surgery, and where the patient presented no evidence demonstrating the defendant hospital had taken some action, or neglected to act, in a way to encourage the patient to believe the anesthesiologist was an employee). However, this court and the Supreme Court have never held that a consent form per se precludes the existence of ostensible agency and here, the record reflects a question of fact as to whether this form could.

Although paragraph one of the consent form stated "Your doctors are not employees or agents of the hospital. They are independent contractors," paragraph five on the first page of the consent form also stated "I herby [sic] authorize Hillsdale [Hospital] to provide its appropriate hospital services and care necessary in conjunction with the procedure(s) above described." The consent form was also a Hillsdale Hospital form, with the hospital's full name and logo at the top of the first page. It is unclear from the record whether Darlene signed the consent forms in the hospital or in Dr. Bediako's clinic. Taking this evidence in the light most favorable to Darlene, we find that a question of fact remains as to whether the consent form she signed can fully negate the potential existence of ostensible agency and thus, whether her belief as to Dr. Bediako's ostensible agency was reasonable. Contrary to the dissent, we do not hold here that a hospital can

---

[3] In *Revitzer v Trenton Med Ctr, Inc*, 118 Mich App 169, 174-175; 324 NW2d 561 (1982), this Court held a preexisting patient-physician relationship was sufficient to defeat a claim of liability under ostensible agency theory where the offending physician had been treating the plaintiff for fifteen years prior, and in *Chapa*, 192 Mich App at 31, 33-36, this Court held said relationship was sufficient to undermine ostensible agency where the offending physician had been the plaintiff's "long standing" family physician.

[4] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Kennard v Liberty Mut Ins Co*, 341 Mich App 47, 53 n 2; 988 NW2d 797 (2022) (quotation marks and citation omitted).

*never* successfully inform a patient of its limited liability. In fact, we do exactly what the dissent says we do not—we take a look at the circumstances in full. Here, the record does not reflect where the consent forms were signed but does reflect that the consent forms said two things: Dr. Bediako was an independent contractor *and* that Hillsdale Hospital was the service provider. Looking at the facts taken together, not in isolation, leads us to the conclusion that a genuine issue of material fact exists as to whether Dr. Bediako was an ostensible agent of Hillsdale Hospital.

That conclusion is unchanged when we look at the final two *Grewe* factors. The second prong of the *Grewe* test for ostensible agency is that a plaintiff's belief in the authority of the ostensible agent must be generated by some act or neglect of the principal sought to be charged. *Grewe*, 404 Mich at 253. Here there is no dispute that defendant allowed Dr. Bediako, who was the only physician working in the OB Department, to wear scrubs that said "Dr. Bediako, OB Department," and there is no dispute that the hospital issued him a badge to wear that said the hospital's name. There is nothing in the record to suggest that the hospital took any steps regarding those scrubs or that badge to counter the impression that Dr. Bediako worked for the hospital, i.e., the record suggests that the hospital neglected to ensure that the badge and/or scrubs contained anything communicating that Dr. Bediako was an independent contractor and/or was not an actual employee of the hospital. Darlene also testified at her deposition that her own personal belief was that Dr. Bediako worked for the hospital. This satisfies the second prong of *Grewe*.

Finally, the third prong of *Grewe* requires that the person relying on the agent's apparent authority must not be guilty of negligence. The record in this matter is devoid of any evidence of negligence by Darlene, and the hospital has not alleged that Darlene was negligent – the hospital's brief on appeal contains no analysis of the third prong of *Grewe*, other than a vague assertion that " . . . none of the three prongs of *Grewe* are met.").

Having established that a question of fact remains as to whether Dr. Bediako was an ostensible agent of the hospital, we remand to the trial court for further proceedings.

## IV. CONCLUSION

The circuit court erred in granting the hospital's motion for summary disposition when it ruled there was no genuine dispute of fact regarding an ostensible agency theory of vicarious liability. We reverse the order of the circuit court granting summary disposition to the hospital, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Randy J. Wallace

-7-